## Walter Ware v. Illinois Central Railroad Company.

Gen. No. 11,870.

1. PEREMPTORY INSTRUCTION—*rule where complained of.*  Where a peremptory instruction for the defendant is complained of, the true question is, is there any evidence in the case which, if true, with all the inferences and intendments reasonably to be drawn from it, would have tended to support a verdict for the plaintiff? This question is to be considered, leaving entirely out of view the effect of all modifying or countervailing evidence.

2. NEGLIGENCE—*when carrier not guilty of, towards passenger, who was about to alight.*  Held, in this case, that no negligence by the carrier was established and that nothing unusual or unjustifiable was proved against the carrier or its servants, either in the construction of its car, the management of its train, or the

location of the building material it had, for proper purposes, placed by the side of its track.

3. PASSENGER—*limit of liability of carrier to*. A carrier is not an insurer of its passengers against injury.

Action on the case for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Heard in this court at the October term, 1904. Affirmed. Opinion filed March 27, 1905.

**Statement by the Court.** This is an appeal from a judgment of the Circuit Court of Cook County in favor of the appellee against appellant for costs. The judgment was on the verdict of a jury, but this verdict was one directed by the court. The action was for the alleged negligence of the appellee, by which the appellant lost his arm. The injury sued for occurred in 1891, when the appellant was a child eleven years old, and the suit was brought when he became of age.

The amended declaration on which the cause was tried consisted of three counts. The first count, after reciting that the plaintiff, a child of eleven years, was in the exercise of reasonable and ordinary care and diligence for his own safety for one of his years and experience, on January 31, 1891, a passenger on one of the defendant's trains from 60th street to 53rd street, avers that the defendant was negligent in that the platform on the end of the car was not protected by a railing or gate, and that "when said train was approaching its usual stopping place at 53rd street station, and after the servant of the defendant had announced 53rd street," the plaintiff passed out to the front platform of the car "for the purpose of alighting therefrom at 53rd street when the train should stop at the 53rd street station," and that the defendant "carelessly and negligently caused the brakes to be applied suddenly and with such force and violence that it stopped said train and car with a sudden jerk that threw the plaintiff from said platform to and upon a pile of rocks or stones that was piled at or near the tracks of the defendant, from which plaintiff rolled down against

the track," and received the injuries described and complained of.

The second count avers a duty on the part of defendant "to have the tracks and approaches to the platform or stopping place at 53rd street in a safe condition for the plaintiff to alight from said car," and alleges that the defendant had "negligently permitted a pile of stones or rocks to be piled up at or near the track of the defendant and close to the platform where it was usual and customary for passengers to alight when desiring to stop at 53rd street," and that after the announcement of the 53rd street station, the plaintiff went out on the front platform of the car for the purpose of alighting, and that the defendant's employees so carelessly and negligently stopped the train and with such a sudden and violent jerk that it threw the plaintiff from said platform to and upon said pile of stones and rocks, from which he rolled down against the defendant's track," and suffered the injuries complained of.

The third count avers a duty on the part of the defendant to have a careful employee in charge of the car on which plaintiff was a passenger, and avers that there was no employee of the defendant in the car when the plaintiff left the car and went on the front platform; that there was no caution or advice given to the plaintiff to caution him from going out upon the platform of the car, after the announcement of the 53rd street station, nor had he knowledge of the stones or rocks piled near the tracks of the defendant near the point where he proposed to alight at the 53rd street station, nor was he warned as to the danger arising from the rocks or stones piled on defendant's right of way and alongside of defendant's track near the 53rd street station, and that when the train approached said 53rd street station it was stopped with a sudden jerk in such a negligent and wrongful manner that the plaintiff was thrown from the platform and upon a pile of rocks or stones near the defendant's track and injured.

The defendant pleaded the general issue.

At the conclusion of the plaintiff's evidence the defend-

ant moved the court to instruct the jury to find the issues for the defendant, and the court allowed the motion and so instructed the jury. To this and to overruling the motion for a new trial, exceptions were preserved.

In this court the assignments of error are directed to the action of the court in taking the case from the jury.

JAMES H. DAVIDSON, for appellant; OSSIAN CAMERON, of counsel.

W. A. HOWETT, for appellee; JOHN G. DRENNAN, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

Appellee's counsel in their brief in this case declare it to be the law that "If, at the close of all the evidence the trial court shall be of the opinion, from a consideration of all the evidence, a verdict for the plaintiff ought not to stand, if one is returned, it is the duty of the court to instruct the jury to find for the defendant." This is not the law. It has been emphatically declared by the Supreme Court not to be the law in many late cases. See Woodman v. Illinois Trust & Savings Bank, 211 Ill. 578, and the cases which are therein cited, especially Chicago City Railway Co. v. Martensen, 198 Ill. 511, where it is said that the rule contended for by the appellee's counsel here would leave the right of trial by jury to the judgment and discretion of the court, and is not to be seriously regarded.

When a peremptory instruction for the defendant is complained of, the true question is: Is there any evidence in the cause which, if true, with all the inferences and intendments reasonably to be drawn from it, would have tended to support a verdict for the plaintiff? This question is to be considered, laying entirely out of view the effect of all modifying or countervailing evidence. Woodman v. Illinois Trust & Savings Bank, *supra;* Frazer v. Howe, 106 Ill. 563; Rack v. Chicago City Ry. Co., 173 Ill. 289. In applying this rule to the cause at bar, a brief discussion of the evidence seems proper.

The plaintiff at the time of the accident was about eleven years old. His father testified that he was a reasonably smart boy for that age, and was attending school, and that he was trusted with transportation and permitted to ride on the Illinois Central trains. The plaintiff himself testified that on the day in question he took the train at 60th street, and with three other boys went into the coach next to the engine, and paid his fare by ticket. The train stopped at 57th street, and there the plaintiff says he was still in the seat. He then proceeds in his testimony: "We continued to sit there until we were nearing Hyde Park station. As we were nearing the station the conductor came in and announced Hyde Park, Fifty-third street, and went back in the other car to announce the same. He made this announcement at the south end of the coach we were in. We got up to leave the train and walked to the north end of the north car and we opened the door, and I believe I was the first one to leave the car, and as I opened the door the brakes were set and I reached around and felt myself going forward and reached around with my left hand to catch the rail on the side of the car and got hold of that all right, but I seemed—there was across in the front of the car there was a rail with a chain in the middle, something like the one on the other side, and I reached around to catch under (on to?) the rail and I missed that entirely and seemed to slip down from the steps onto the stones, and further than that I don't remember. When I felt myself falling I do not recollect anything further than that until after I had been run over—I don't remember anything during the time the train was passing over me, but just as the rear car came by me I remember looking up and seeing the rear of the last car was no more than five or six feet from me, because I looked up and saw fellows looking right over me. I had hold with my left hand of the rail. What broke me loose from there was the fact that I did not catch hold of anything with my right hand, continuing to throw me down the step. The train was stopped and there was that sudden lurch—the car was stopped suddenly, and

it of course threw me forward and I had hold of the rail to stop myself from going forward, and reached up to get the—I didn't, and it threw me down the steps." On cross-examination he said that he was familiar with the neighborhood about 53rd street, and by looking out of the window he could tell where he was, and that when he got out on the platform he could see the 53rd street station in the distance. Being asked if when he came out on the platform he did not immediately turn and start down the steps, he said that he did not.

Mr. McMurray, a witness for the plaintiff, testified that he saw the accident; that he was standing near the center of the station platform at 53rd street directly in front of the ticket office window, and saw the train coming north. He started to walk toward the south end of the platform to get into the smoker at the rear of the train, and saw the plaintiff come out of the car on to the front platform about half a block, "two hundred and fifty—possibly three hundred feet" south of the station platform. The plaintiff "started," Mr. McMurray says, "toward the steps to go down, and he got down one or two steps and all of a sudden went off. There was a curve there, it is not directly straight. He grabbed as he went off and was facing west, and with his left hand he got hold of the guard rail and he missed with his right, so that it swung him around and he fell upon the ground. The motion of the train threw him up on the pile of stone, that was possibly four feet high, and he rolled from there back again and his hand went under the car, and as he fell both the officer and I started toward him, but the space near that track, in between the stone and train, was so narrow that we—we got to the stone pile previous to the train coming to a full stop. After it had stopped we went on down and picked the boy up and carried him to the station. At the place where he lay he was about half the distance from the wooden" (station) "platform, that he was when he came out of the door of the car—one hundred or one hundred and twenty-five feet south of the wooden platform, that was about sixty or

seventy feet south of the north end of the rock pile." On cross-examination this witness said that the train made its ordinary stop, the engine stopping in the neighborhood of the south line of 53rd street, so that when the boy fell off he was between three hundred and three hundred and sixty-five feet from where he would have gotten off if he had stayed on the train. The witness said that he didn't see anything unusual in the running of the train; it was slowing up for the station. It could not, he says, have been running over six miles an hour at that point. He did not notice any jerk.

Mr. John Ward, who was with Mr. McMurray, says that he saw the plaintiff come out of the front door of the first car, and he should say that the car was about four hundred or five hundred feet from the station; that he thinks the train had commenced to slow down at the time he saw him, and that it was about thirty seconds from the time he first saw him until he fell. He says: "I saw him come out of the front door of the first car. I did not see any one with him, and he held his hand out as though he were getting hold of the rail; his feet slipped from under him and he went bumpety-bumpety off the steps, and his feet struck the stone pile beside the track, which threw his hand toward the north; he spread out his hand—cut it right off. When the boy fell he slid down the steps, and when his feet struck the stones he held his hand on the rail and it pulled his body, and as he held out his hand, he was back down on the rock." On cross-examination the witness said: "I saw this boy when the train was about four hundred or five hundred feet away. He came out of the door and turned his face towards the west side of the car and started to walk down the steps and put both hands out like this (indicating). I could not see whether he got hold of the rails or not. He started down one step and all at once I saw him start down bumpety-bumpety. At that time the train was slowing up. I saw nothing unusual about it to indicate any unusual movement. The boy was about two hundred and fifty or three hundred feet from me, probably a little more, when he fell. He was possibly about twenty feet

south of the north end of the stone pile. When the train came to a stop, I think it had left the boy south of the rear end of the car. At the time of the accident the speed of the train was four or five miles an hour. When the boy came out at the door he might have been on the platform a few seconds before he started down the steps. He did not seem to be in any hurry—he seemed to walk out slowly and started down the steps."

Mr. James O. Sullivan, another witness for the plaintiff, says that he was near the station at 53rd street at the time of the accident, and that his attention was attracted to the accident as the train was coming in, and he was watching it, by hearing some one halloo. He ran with others, and found the plaintiff lying alongside of the track, pretty near to the last car or second to the last car—he would not be positive. On cross-examination the witness said the train made the usual stop that it makes at ordinary times, the engine stopped at about the usual place, and the boy was about even with the rear car.

This is practically all the testimony concerning the accident itself. The evidence showed that the car in which the plaintiff was riding was constructed like all other railroad cars of the time for such traffic.

As to the stone pile, which the declaration alleges was "at or near the track of the defendant and close to the platform where it was usual and customary for passengers to alight when desiring to stop at 53rd street," it appears from the evidence that the defendant company was at the time building a retaining wall along the west side of its track, and that the stone so piled up along the track was the necessary material for it.

It further appears that there was a wooden platform in front of the 53rd street station about a hundred feet long, and south of that a cinder walk, of which the greater part was free from any obstruction. The father of the plaintiff testified that toward the south end of this cinder walk the stone pile had encroached somewhat upon it, but it appears plainly that a long stretch of it was clear, and that there

was ample space for all passengers to or from 53rd street to get on and off the cars.

There can be in our opinion no argument successfully made that there is anything in this evidence tending to show or imply any negligence on the part of the railroad company which resulted in this unfortunate accident. Nothing unusual or unjustifiable is proved against the company or its servants, either in the construction of its car, the management of its train, or the location of the building material it had, for proper purposes, placed by the side of its track.

A railroad company is not an insurer of the safety of its passengers, and in the absence of some such unjustifiable act of commission or omission, cannot be held liable for injuries which they suffer. This renders it unnecessary for us to decide whether intelligent men could reasonably differ on the question whether appellant is shown by the evidence to have been guilty of contributory negligence. It would be necessary for us to decide that they could not, to warrant us in sustaining on this ground alone the trial court in its action, the question of contributory negligence being usually for the jury. Hoehn v. C. P. & St. L. Ry. Co., 152 Ill. 223, p. 229. If such decision were necessary, however, we think it would be hard to distinguish this case from Kerr v. C., R. I. & P. R. R. Co., 100 Ill. App. 148, where it was held that the act of the plaintiff in going upon the platform of a moving train, under similar circumstances, was clearly contributory negligence, and that the cause was properly taken from the jury.

Appellant's counsel cite The Pennsylvania Company v. Versten, 41 Ill. App. 345, but that was a very different case. It would appear that the verdict of the jury in that case was sustained because, from the evidence, they could justifiably believe that it was the duty of the defendant corporation, under the circumstances proved, to make a stop at a certain place, but that it neglected to do so, and on the contrary suddenly quickened the speed of its train and threw off the plaintiff while he was preparing to alight.

We think that in the case at bar it was the duty of the trial court to give the peremptory instruction complained of, and that it would have been error to refuse it.

The judgment of the Circuit Court is affirmed.

*Affirmed.*