Joseph Malewski and Helen Malewski, Appellants, v. Justin Mackiewich, Appellee.

Gen. No. 38,355.

Opinion filed December 16, 1935.

WACHOWSKI & WACHOWSKI, of Chicago, for appellants; J. J. BUCKLEY, of Chicago, of counsel.

JOHN T. ZURIS and EARL J. WALKER, both of Chicago, for appellee.

MR. JUSTICE MATCHETT delivered the opinion of the court.

In an action brought by plaintiffs for alleged fraud and deceit in the sale of a note for the sum of $6,000, secured by a trust deed, and upon trial by jury, at the close of all the evidence, defendant made a motion for an instructed verdict in his favor. In conformity with paragraph 3 of section 68 of the Civil Practice Act (Ill. State Bar Stats. 1935, ch. 110, p. 2447), the court reserved its decision on the motion and submitted the cause to the jury, which returned a verdict for plaintiffs in the sum of $3,781.62. Defendant then made a motion for a judgment in his favor, notwithstanding the verdict, and the court being of the opinion that plaintiffs had not produced sufficient evidence to sustain its allegations of fraudulent representations, granted the motion and entered judgment in favor of defendant. The court certified in the record that the amount of damages proved was $3,781.62 as found by the verdict of the jury, and that judgment should be entered for that sum in favor of plaintiffs and against defendant if it should be determined upon appeal that plaintiffs produced sufficient evidence to sustain the allegations of the complaint as to fraudulent representations in the sale of the note. From that judgment plaintiffs appeal, and defendant, assigning cross errors, argues not only that the judgment of the trial

court should be affirmed but further, that if this court is of a contrary opinion on that issue, judgment should not be entered here in favor of plaintiffs but the cause reversed and remanded on account of errors in the course of the trial, which defendant asserts, in case of reversal, would require the cause to be submitted to another jury.

The first and controlling question in the case, as it appears to us, is whether the court erred in entering judgment for defendant notwithstanding the verdict,— a question which, as already stated, arises under the procedure provided by the Civil Practice Act and is to be distinguished from a judgment *non obstante veredicto,* as the same was in appropriate cases granted under the practice at common law. At common law, such motion arose upon the pleadings and was determined by an examination thereof. Under the Civil Practice Act, as here, the question arises upon an examination of the evidence and the determination from such examination of whether upon all the evidence, plaintiffs, as a matter of law, had a right to recover.

As already stated, the action of plaintiffs is for fraud and deceit on account of alleged false representations of defendant in the sale and delivery to plaintiffs of a note for $6,000, which was dated July 21, 1924, due five years after date (extended 10 years after date), made by Zigmont Dobrowolski and Annie Dobrowolski, his wife, drawing interest at the rate of six per cent per annum. The note, with others, was secured by a trust deed, conveying as security for this and other indebtedness the real estate known as 2324 South Leavitt street, Chicago. Defendant was president of the Standard Federal Savings & Loan Association engaged in the mortgage and insurance business, with offices at 2342 South Leavitt street, Chicago. The transaction took place at his office January 17, 1931.

Plaintiffs and defendant were Lithuanians, and the evidence tends to show that plaintiff Malewski spoke English only with considerable difficulty. Two or three prior transactions had taken place between the parties who were mutually interested in a building and loan association. Plaintiff Malewski and defendant had been acquainted for about 20 years.

The evidence shows that Malewski inquired of Mackiewich as to whether he had a mortgage for sale on premises nearby; that he wished to transfer his share in the building and loan association for such a mortgage that would pay more interest. Defendant suggested to him, among others, the purchase of a mortgage on the Dobrowolski property situated at 2324 South Leavitt street, only a short distance from the home of plaintiffs, and with this property they were entirely familiar. There is some divergence in the testimony as to what was said at the first interview, but the evidence shows without contradiction that defendant Mackiewich gave to Malewski the opinion of title of the Dobrowolski property prepared by Judge John C. Lewe, and that plaintiff took the opinion with him. Thereafter Malewski returned with his wife and brought with them the proceeds of the shares in the building and loan association and additional money, making a total sum of $6,000. This sum was paid to defendant and plaintiffs were given the note and coupons, the trust deed, extension agreement, the opinion of title already referred to, and an insurance policy covering the building located upon the mortgaged premises. These papers were placed in a safety deposit box, and thereafter as the coupons matured, the same were presented by plaintiffs at the office of Mackiewich, where the note and coupons were payable.

In July, 1932, default was made in the payment of the interest which had accrued. As a matter of fact the note purchased by plaintiffs from defendant was

one of a series of six notes, No. 2 being for $3,000 and Nos. 3, 4, 5 and 6 for $1,000 each, the total indebtedness (including No. 1 purchased by plaintiffs for $6,000) secured by the trust deed amounting to $13,000. All of the notes drew interest at the same rate per annum and by their terms matured upon the same date.

The complaint alleges, in substance, that defendant for the purpose of inducing plaintiffs to pay $6,000 for the note "then and there wilfully, maliciously, fraudulently and falsely represented that said note and extension interest coupons represented the total amount of the mortgage indebtedness secured by said trust deed above described, or represented that these plaintiffs were purchasing a first mortgage against said property in the sum of Six Thousand Dollars ($6,000.00)."

The evidence, which it is urged tends to prove these allegations consists entirely of the testimony of Mr. and Mrs. Malewski as to oral conversations with defendant at the time of the transaction. Mr. Malewski testified:

"He (Mackiewich) said, 'Malewski, I got mortgage $6000 by Mr. Dobrowolski.' I said, 'How much you got mortgage?' He said, '$6,000.' I said, 'I haven't got any more $6,000.' 'Well,' he said, 'You got a Building loan, $3,000.' I said, 'I finished that, finished loan, Building loan.' He asked me, he said, 'I will take that out, that Building loan and put it together, put it with that $3,000, you have $3,000?' I said, 'Well, I was saving my money, $2,600.' I take that out the money and put all together.

"I said, 'How much will that cost?' He said, 'That building cost $23,000.' I said, 'That building cost high, look like $10,000.' He said, 'You got $6000 mortgage, what do you want?' I say, 'Well, invest my own money, $6,000 mortgage.' 'Well, all right, maybe some day have nice mortgage property and take your money, if you got money,' you know.

"I say to Mr. Mackiewich, house go down, I say that house not worth today only about $9,000 or $10,000 to buy that mortgage, I say how much you got that mortgage? He says $6,000. I say give me a slip that you got that $6,000 mortgage. You got that slip what he gave me says $6,000."

Mr. Malewski also said that he received the exhibits, namely, a receipt for the money, the note, the trust deed, the agreement for extension of loan and extension coupon notes but that at the time he received them he did not read them and that he did not know what was written in them. He testified:

"When he (Mackiewich) told me there was only a $6,000 mortgage on this property I believed him and I paid him $6,000 for that mortgage. . . . When he gave me these Exhibits 1 to 9 I keep them in a little box, I take papers to keep in the bank box. I collected interest twice." He further said that in July, 1932, he asked defendant for the interest and that defendant replied, "Dobrowolski don't pay me and I don't pay you." Thereafter there was a foreclosure of the trust deed, a sale of the property and a deficiency judgment to the amount for which the jury returned a verdict.

Mrs. Malewski says that at the time of the purchase of the note she went to the office of defendant with her husband, and further says:

"He said he would sell us mortgage for $6,000. That there was no mortgage on that then, $6,000. . . . We did not know there was a $13,000 mortgage. He said there was only $6,000 there. There was a first mortgage, $6,000. The interest coupon of July, 1932, was not paid."

On cross-examination of Mrs. Malewski the following occurred:

"Q. When was the first time he told you the mortgage was for only $6,000.

"A. I forgot now, I don't what—

"The interpreter: Take a look at that card, whatever it is.

"Mr. Wachowski (attorney for plaintiffs): I don't think she understands about this question to her.

"Mr. Walker (attorney for defendant): In January of 1931?

"The Witness: Yes.

"Q. You say Mr. Mackiewich told you that the only mortgage on the property was this $6,000, is that right?

"A. Only $6,000.

. . . . .

"Q. And did he say anything else about the investment at that time, except that the amount of it was $6,000? A. He said nothing else, except he said first mortgage there was for $6,000."

The testimony as to these oral conversations is contradicted by the testimony of Mackiewich, who explains that he told Malewski about the several notes of the series and that the total mortgage was for $13,000, and absolutely denies that at any time he said to plaintiff Malewski or his wife that the total amount of the mortgage on the property was only $6,000. He testifies positively (and his testimony on this point is not contradicted) that the first complaint made in this regard was by Mrs. Malewski after the foreclosure sale.

Helen Kuchinskas, who was employed by defendant at the time in question, also testified in detail as to the transaction, her testimony fully corroborating defendant in this respect. The trust deed and the opinion of title of the attorney fully stated the facts as to the series of notes secured by the trust deed and conveyed clearly the information that the total amount thereof was $13,000. If the question before us for consideration was whether the verdict of the jury was clearly and manifestly against the weight of the evidence, we

would be compelled to give an affirmative answer. The testimony of plaintiffs as to the actual transaction when the note was purchased is vague, uncertain and highly improbable under all the circumstances which appear in evidence. They were not wholly deficient in their knowledge of the English language, and the information given by the trust deed and the opinion of the attorney was clearly to the effect that the total incumbrance was $13,000. We are clearly of the opinion that under the circumstances here a judgment entered on the verdict in favor of plaintiffs might not be allowed to stand. However, that is not the precise question to be determined. As plaintiffs point out, it is the law that upon a motion for a directed verdict for defendant at the close of all the evidence, the true question is whether there is any evidence in the case upon which, if true, with all the inferences and intendments reasonably to be drawn therefrom, the jury might reasonably return a verdict in favor of plaintiffs, and if so, an instruction for defendant should not be given. *Ware v. Illinois Cent. R. Co.,* 119 Ill. App. 456; *Fleming v. Ludington,* 121 Ill. App. 54; *Woodbury v. Ocean Accident & Guarantee Corp., Ltd.,* 205 Ill. App. 387, are cited and, like many other cases, sustain this proposition. In determining the question of whether there is any evidence from which a jury might reasonably find in favor of plaintiffs, the essential nature of the action brought may not be entirely disregarded. This is an action for deceit and fraud, and in order to recover in an action of that character there must be proof reasonably tending to show the several elements necessary to constitute such fraud, namely, that the representations were made by defendant; the falsity thereof; their materiality; defendant's knowledge of such falsity, or his ignorance of the truth thereof; defendant's intention that the representations be acted upon by plaintiffs; plaintiffs' ignorance of the

falsity of the representations made; their reliance on the truth of the false statements; their right to rely thereon, and their consequent and proximate injury. This summary of the essentials necessary to sustain an action for fraud and deceit is elementary and hardly needs the citation of authorities. 26 Corpus Juris 1062; *Bouxsein v. First Nat. Bank of Granville*, 292 Ill. 500.

It is also the law that in an action for fraud and deceit the evidence by which these essential elements are established must constitute proof so clear and convincing in its nature as to leave the mind well satisfied that each and all of these elements of fraud have been established. *Union Nat. Bank v. State Nat. Bank*, 168 Ill. 256; *Preston v. Lloyd*, 269 Ill. 152; *Wolf v. Lawrence*, 276 Ill. 11; *Garrett v. Garrett*, 343 Ill. 577; *Gould v. Lewis*, 267 Ill. App. 569; *Standard Mfg. Co. v. Slot*, 121 Wis. 14; s. c., 105 Am. St. Rep. 1016.

Largely, for the reasons we have already summarized, it must be held that the evidence produced by plaintiffs in this case does not establish these essential elements by any such quantum of proof, in that it does not establish as a fact that plaintiffs relied upon these alleged oral representations. On the contrary, it appears that they demanded and took with them the trust deed itself and the opinion of the attorney upon the title showing clearly that the trust deed was given to secure a series of notes amounting to $13,000 and not a single note for $6,000. It cannot be said that plaintiffs had any right to rely on oral representations when the written evidence as to the facts was in their possession, and the fact that their knowledge of the English language was somewhat defective would not excuse them in this respect. As was well said in *Chicago, St. P., M. & O. Ry. Co. v. Belliwith*, 83 Fed. 437:

"If one can read his contract, his failure to do so is such gross negligence that it will estop him from denying it unless he has been dissuaded from reading it by some trick or artificial practice by the opposite party. If he cannot read it, it is as much his duty to procure some reliable person to read and explain it to him before he signs it as it would be to read it before he signed it if he were able to do so; and his failure to obtain a reading and an explanation of it is such gross negligence as will estop him from avoiding it on the ground that he is ignorant of its contents. . . . The fact that, as we have seen, the plaintiff was charged under the law with full knowledge of the contents of this agreement is itself fatal to his claim for there could be no deceit where there was no ignorance and no concealment. . . . The solemn written agreements of men cannot be whistled down the wind by the testimony of one of the parties to them, to such a story as this . . . the evidence in this case comes far short of that clear, convincing and unequivocal proof which would warrant either a jury or a court in finding either mistake, fraud or deceit in the execution of this contract, and the court below was in error when it refused to instruct the jury to return a verdict for the Company." The rule in Illinois is similar. *Guerra v. Rocco,* 181 Ill. App. 528; *Shulman v. Moser,* 284 Ill. 134.

It is quite unnecessary to review in detail the many cases cited in the brief. We think no reviewing court could ever allow a judgment entered upon a verdict returned on such evidence to stand. While there is slight evidence of an alleged false representation, there is no evidence that plaintiffs relied thereon, but, on the contrary, uncontradicted affirmative evidence that they did not rely upon it. There is no evidence, therefore, tending to sustain an essential element of the cause stated in the complaint, and for that reason,

as well as because the quality of the evidence considered as a whole was insufficient to justify a reasonable verdict for plaintiffs, the trial court rightly entered judgment in favor of defendant, notwithstanding the verdict of the jury. The judgment is therefore affirmed.

*Affirmed.*

McSurely, P. J., and O'Connor, J., concur.