Stanley M. Ringel, Administrator of Estate of Oliver B. Kruger, Deceased, Appellant, v. Helding Pearson, Appellee.

Gen. No. 9,568.

Opinion filed June 28, 1940. Rehearing denied August 1, 1940.

LAUDON & MORTEN, of Redwood Falls, Minn., and FRANKLIN P. SEARLE, of Rock Island, for appellant; JULIAN E. MORTEN, of counsel.

SAFFORD, KRITZER & FULTON, of Monmouth, THOMAS J. WELCH and VERA M. BINKS, both of Kewanee, for appellee.

MR. JUSTICE DOVE delivered the opinion of the court.

Stanley M. Ringel, administrator of the estate of Oliver B. Kruger, deceased, brought this suit against Helding Pearson to recover damages for the alleged wrongful death of his intestate. The complaint charged that plaintiff's intestate, while walking north on State Route 78 on December 25, 1938, near the village of Annawan, was struck and killed by an automobile being driven in a southerly direction along said highway by the defendant. The answer of the defendant denied the charges of negligence, denied that the plaintiff was in the exercise of due care for his own safety and denied that the next of kin of the deceased suffered any pecuniary loss by reason of his death. The defendant also set up a special defense in which he alleged that on December 28, 1938 the plaintiff, as administrator of the estate of Oliver B. Kruger, in consideration of the sum of $1,250, released and relinquished all claims, action and causes of action against the defendant on account of or arising out of the acts described in the complaint. The release was set out in full and was dated December 28, 1938 and signed and acknowledged by the plaintiff as administrator of the estate of Oliver B. Kruger, deceased, and the special defense concluded that by reason of said release the plaintiff as administrator is barred from maintaining this action.

To this special defense the plaintiff replied, alleging, among other things, that at the time of the accident the deceased had two brothers who reside on farms a short distance from the scene of the accident. That decedent's next of kin were Verna Johnson, his daughter, Harlan Kruger and Walter Kruger, his sons, and that at the time of the death of their father they resided in the State of Minnesota and were absent from the State of Illinois. That upon the evening of the accident the body of plaintiff's intestate was taken to the undertaking establishment of Paul Wilson, who refused to release the body for the purpose of expressing it to the State of Minnesota for burial until the fees and charges

of the undertaker were fully paid; that the brothers of said decedent living in Illinois did not have the money with which to pay said undertaker; that said brothers were not the next of kin of decedent and had no pecuniary interest in his estate; that there was an unfriendly relationship existing between the brothers and the children of the decedent; that the defendant was covered by a public liability policy of automobile insurance issued by the Farmers Auto Insurance Association of Pekin, Illinois, by the provisions of which said company was liable to pay any judgment, within the limits of the policy, which might be obtained against the defendant as a result of said accident and that said insurance company, by reason of the provisions of said policy, is conducting the defense of this suit for said defendant. That said insurance company being so liable for damages as a result of said automobile accident, by its agents and servants on December 26, 1938 entered into a plan and conspiracy to cheat and defraud the plaintiff and the next of kin of the decedent by misrepresentations with reference to the cause of action arising by virtue of the wrongful death of said decedent. That as a part of said plan one Ferdinand, an adjuster for said company, called on the brothers of said decedent at their farm homes and stated to them that neither the defendant herein nor said insurance company was liable in a suit for damages as a result of said accident and that if suit were instituted against the defendant no recovery could be made against him and that even if judgment were obtained against him, such judgment would not be collectible because he had no property and that under the terms of its policy the insurance company would not have to pay even though a judgment was obtained against the defendant as a result of the accident. The reply further alleged that Ferdinand told said brothers of said decedent that they were legally liable to said undertaker for his charges and services in preparing the body of the decedent for burial; that

if a settlement were made with reference to this cause of action, the proceeds could be used to pay the undertaker for his charges and thereby relieve said brothers from their personal liability therefor; that said brothers should get one of their farmer neighbors to act as administrator of the estate of said decedent for the purpose of executing a release to the defendant and to said insurance company and that it was not necessary for them to communicate with the children of the decedent with reference to the settlement or to get the consent and approval of the said children for said settlement but that if a settlement were to be made it would have to be made immediately, otherwise the insurance company would pay nothing. That thereupon the said brothers of said decedent and said Ferdinand came to the plaintiff and requested the plaintiff to act as administrator as aforesaid and thereafter the plaintiff met with said brothers and with said Ferdinand and with one Thomas Welch, the attorney for said insurance company; that they met at the undertaker's parlor in Annawan, Illinois; that said Ferdinand then and there made the same representations to plaintiff that he had theretofore made to said brothers of said decedent and the said undertaker then and there stated that he would not permit the remains of said decedent to be sent to Minnesota for burial until his charges had been first paid. The reply then alleges that the plaintiff relied upon the false, fraudulent and deceitful statements of Ferdinand and believed said statements to be true and thereupon consented to act as such administrator and went with said brothers of said decedent and the said Ferdinand to the office of said Thomas Welch at his law office in Kewanee, Illinois; that said attorney was acting for and on behalf of said insurance company and that he then and there stated to the plaintiff that said proposed settlement was a good settlement, that it was very questionable if any recovery could be made if the proposed offer of settlement were not accepted and

advised the plaintiff that the said undertaker could be paid from the proceeds of said proposed settlement. That thereupon the said attorney prepared the legal instruments necessary to appoint plaintiff as such administrator and appeared with him in the probate court of Henry county and procured his appointment as such administrator and prepared said release set forth in said special defense; that the plaintiff believed and relied upon said statements and representations and accepted said sum of $1,250 and executed a receipt therefor together with said release. To this reply defendant answered, admitting that at the time of the accident the decedent had two brothers residing in Henry county and that his three children, his next of kin, resided in the State of Minnesota and that the body of the decedent was taken to the Wilson Funeral Home in Annawan but denied all the other allegations set forth in plaintiff's reply.

On motion of the defendant the trial of the issue raised by the special defense, reply of the plaintiff and answer thereto was heard by the court without a jury and at the conclusion of the evidence introduced on behalf of the plaintiff the trial court rendered judgment in favor of the defendant in bar of the action and against the plaintiff for costs. To reverse this judgment the plaintiff appeals.

The evidence disclosed that Oliver Kruger, the decedent, died almost instantly as a result of injuries which he received on the evening of December 25, 1938 when he was struck by an automobile operated by the defendant while decedent was walking along Route 78 south of Annawan, Henry county, Illinois. The accident occurred between 6 and 7 o'clock in the evening. The decedent was a divorced man, working as a farm hand near Annawan and earning $40 per month in addition to his room and board. He was 53 years of age and left him surviving three adult children, all residing in Minnesota, Harlan Kruger, 25 years of age, Verna Kruger

290

Johnson, 23 years of age and Walter Kruger, 22 years of age. The decedent had three brothers residing in the State of Illinois, Chris Kruger aged 45, whose wife is a sister of the plaintiff herein; Hans Kruger, who lived in Chicago and was 48 years of age, and Ed Kruger, who was employed on the farm of his brother Chris Kruger and was 55 years of age. Chris Kruger was the owner and manager of his own farm. The plaintiff is a farmer having a common school education and at the time of the accident was 42 years of age.

After the accident the body of decedent was taken to the Wilson Funeral Home at Annawan and the following morning the brothers of the decedent, accompanied by the plaintiff and plaintiff's sister, Mrs. Chris Kruger, went to the undertaking parlors to attend the coroner's inquest and at their request no inquest was held until they had had an opportunity to go to the scene of the accident. Thereafter Mr. and Mrs. Chris Kruger, Ed Kruger and the plaintiff drove to the scene of the accident and returned to the funeral home and attended the inquest, after which they went to the Chris Kruger home. They then returned to the Wilson Funeral Home, where Wilson, the undertaker, advised them that a Mr. Ferdinand, representing an insurance company, had been there and made an offer to settle the liability of the defendant and would pay around $350; that he, Wilson, had told Mr. Ferdinand that he did not think the brothers of the decedent would accept any such offer inasmuch as a railroad company had recently settled a death claim for $1,250. That thereupon the undertaker inquired of the brothers whether they were going to take care of the funeral bill or whether the decedent had finances of his own. To this inquiry the Kruger brothers advised Mr. Wilson that the decedent didn't have anything and that they had nothing with which to take care of the undertaker's bill and they didn't believe the children of the decedent had any ready cash at that time. That thereupon Mr. Wilson, the under-

taker, said he would have to have his money before he would release the body for shipment to Minnesota.

The evidence further discloses that the plaintiff and the brothers of decedent then left the funeral home and that evening one of the brothers talked to the daughter in Minnesota and the following morning Chris Kruger, Ed Kruger and Hans Kruger, who had arrived at the Chris Kruger home from Chicago, met Mr. Ferdinand for the first time at the funeral home in Annawan and while there one of the brothers talked by phone with one of the sons of the decedent in Minnesota. Thereafter Mr. Ferdinand, representing the insurance company, again came to the funeral home and told the brothers that the insurance company would pay $1,250 in cash and would further pay the necessary attorney's fees for obtaining the appointment of an administrator, together with the probate court's fees and administrator's fees in full settlement of the claim; that the brothers could use the money to pay Mr. Wilson for his services as undertaker and the body could be released for transportation to Minnesota for burial and that it was not necessary to get the consent of the children of decedent in order that the settlement would be effective. That Mr. Ferdinand stated that they could think his offer over until the next morning at 10:00 o'clock and if they would let him know by that time he would have the matter closed up but that if they didn't accept his offer by that time he would withdraw it. Mr. Ferdinand thereupon left the undertaking parlors and the brothers of the decedent talked the matter over with Mr. Wilson, who told them that he thought, considering everything, that it was a good offer and he advised them to take it; that if they did accept it they would have the cash with which to pay the funeral expenses, otherwise he couldn't let the body go to Minnesota. Before Mr. Ferdinand left, the brothers told him that they ought to have more than he offered but that they would think it over until the next day and let him know. After leav-

ing the funeral home, the brothers of decedent and the plaintiff went to the plaintiff's home and there considered and discussed the offer of the insurance company and decided to accept it. None of the brothers wished to serve as administrator and each suggested that one of the others be appointed. Finally it was agreed that the plaintiff should act as administrator and the next morning all of them went to Annawan to the funeral home and requested Mr. Wilson to call Mr. Ferdinand and he arrived at the funeral home about 11:00 o'clock in the morning. The Kruger brothers advised him that they would accept the settlement and thereupon Chris Kruger, Ed Kruger, Mr. Ferdinand and the plaintiff went in Mr. Ferdinand's car to the law office of Thomas J. Welch in Kewanee. This was on Wednesday afternoon, December 28th, and upon their arrival there Mr. Ferdinand advised Mr. Welch that a settlement had been effected and that the plaintiff was to be appointed administrator and that in addition to paying $1,250 the insurance company would pay the administrative costs, including court's costs and attorney's fees. Mr. Welch prepared the necessary papers and the Kruger brothers, Mr. Welch and the plaintiff went with Mr. Ferdinand in his car to Cambridge, the county seat, where they consulted with the probate Judge and they advised him that a settlement was being made for $1,250. Letters of administration were duly issued to the plaintiff and the release executed and delivered and thereupon Ferdinand gave the plaintiff two drafts, one for $835 and another one for $415. This latter draft for $415 was indorsed by the plaintiff and delivered to Mr. Wilson. Thereafter Chris Kruger left with the body of the decedent for Minnesota for burial.

The evidence further discloses that Harlan Kruger, the eldest son of the deceased, was advised by telephone of his father's death on Sunday night, December 25th, ar 1 the next day he was advised that a settlement was

being considered and on Tuesday he knew that a settlement had been agreed upon and that the amount of the settlement was $1,250. He testified that he lived about 145 miles from St. Paul, Minnesota, living on a farm 2 miles west of Cottonwood. He further testified that he intended to go to Annawan, Illinois for the purpose of taking the body of his father to Minnesota for burial but that there was a snowstorm in Minnesota during that time; that he had some difficulty in communicating by phone with his uncles in Illinois and that he did not go to Illinois inasmuch as he learned that a settlement had been effected.

It is argued by appellant that the statement made by Ferdinand that a judgment against the defendant might not be collectible was a false statement of a material fact and therefore invalidated the release. Counsel for appellee insists that the evidence does not show that this statement was false and that at the most it was merely an expression of an opinion of what might happen in the future and not the statement of an existing or preexisting fact. It is a well-recognized rule that one who seeks relief on account of fraudulent statements must have relied upon such statements. The record in this case discloses that the court inquired of the plaintiff whether he ever at any time took part in determining whether the settlement should be made or not and the plaintiff advised the court that the Kruger brothers had asked him what he thought about it; that he stated he was an outsider and did simply what the Kruger brothers told him to do and made no decision himself. It therefore conclusively appears that no representations made by Ferdinand were relied upon by the plaintiff. He was simply an instrumentality in the hands of the Kruger brothers and did what they requested him to do. The evidence is that the offer of $1,250 by the insurance adjuster was made on Tuesday afternoon and that the adjuster or representative of the insurance company told the plaintiff and the brothers of the decedent

that it would remain open until 10 o'clock the following morning and this adjuster did not meet them again until they sent for him the following morning and he met them at the funeral home at their request. The brothers are the ones who made the decision to accept the offer of Ferdinand and they made it in their own home, when Wilson was not present, when Ferdinand was not present and when Welch, the attorney for the insurance company, was not present. The evidence is that their decision to accept the offer was made known to the plaintiff the following morning when he came to their home and drove with them to Annawan. The plaintiff knew that the settlement proposed was for $1,250 and knew that was the amount he was expected to receive from Ferdinand and that the acceptance of said amount by him was agreeable to the brothers of decedent, some of whom had been in communication with the children of decedent who were in Minnesota.

There is absolutely no evidence in this record that Mr. Welch said or did anything to influence the plaintiff to accept the amount offered by Mr. Ferdinand. He prepared the necessary legal papers in order to have the plaintiff appointed administrator and the release which correctly embodied the agreement of the parties. There is nothing in this record that would impute any fraud to Mr. Welch.

It is insisted that the insurance company entered into a plan and conspiracy to cheat and defraud the plaintiff and next of kin of the decedent. This averment is not sustained by the evidence. No confidential relationship is shown to have existed between the parties to this release and the evidence is that it was in good faith fairly and understandingly entered into. Appellant, as administrator, had authority to settle his claim against a party for wrongfully causing the death of his intestate without an order of the probate court directing him or authorizing him to do so. *Washington v. Louisville & N. Ry. Co.*, 136 Ill. 49.

We have examined the authorities cited by appellant and the evidence found in this record and we are of the opinion that the evidence under the authorities does not sustain the allegations of fraud. The chancellor saw and heard the several witnesses and came to the only conclusion under the law that the evidence warranted.

The judgment will be affirmed.

*Judgment affirmed.*