936

## EAGLE INDEMNITY CO. v. GILL et al.
### Civ. 861–D.

United States District Court
E. D. Illinois.

Oct. 6, 1952.

———◆———

Youngblood & McCray, Evansville, Ind., by Nat. H. Youngblood and Herman L. McCray, Evansville, Ind., Townsend & Townsend, Mt. Carmel, Ill., by Ben H. Townsend, Mt. Carmel, Ill., for plaintiff.

Joseph T. Scott, Grayville, Ill., Horace E. Gunn, Danville, Ill., for defendants Fieber and Medoff.

Leo Burk, Danville, Ill., C. Deneen Matthews, Fairfield, Ill., for defendant A. B. Gill.

PLATT, District Judge.

The Eagle Indemnity Company, a corporation, has brought an action in fraud and deceit against defendants A. B. Gill, Louis Fieber, L. R. Medoff, and W. J. Howe. It was stipulated at the pretrial conference that the court should hear evidence on the liability of the defendants and determine that question before hearing evidence on damages.

The essential facts disclosed by the evidence are as follows: The City of Grayville was contempating building a disposal plant, sewers, and making other municipal

improvements early in 1946. John W. Hoop and W. J. Howe lived in the vicinity of Grayville. They formed a partnership to bid on the Grayville job. Howe was an accountant or bookkeeper and Hoop was a man of some experience as a foreman on engineering projects. Howe was in contact with Mr. Charles H. Kunzer who was in charge of contractors' bonds for the Eagle Indemnity Company. Howe also negotiated for finances with the defendant Gill, who was president of the Citizens National Bank of Albion. On the 8th of March, 1946 Mr. Gill answered an inquiry from Kunzer regarding a performance bond and stated that Mr. Howe had made arrangements with the bank for funds to carry on operations which the bond was to cover. On March 11, 1946 Mr. Kunzer wrote Howe that he could obtain a performance bond from his company by executing an indemnity contract to the company with his father as surety or by arranging a loan of $20,000 on his personal note or mortgage. The money was to be deposited to the account of Hoop and Howe. Mr. Kunzer requested a sufficient notice of the bidding so that his company might furnish a bid bond to file with the City. The total amount of improvements to be made by the City of Grayville were estimated at $165,000. On July 6, 1946 Hoop and Howe sent a financial statement to the plaintiff. It listed the following assets and liabilities:

"Cash in Bank (as per Schedule 'A') ............... 18,035.00
Equipment at Book Value (as per Schedule 'G')..... 620.00

Total Assets ..... 18,655.00

Notes Payable (As per Schedule 'I') ........... 12,000.00

Total Current Liabilities 12,000.00"

Schedule "A" and "G" of the statement were not filled out, but Schedule "I" was completed as follows:

| "Amount | Name and Address of Party to Whom Payable | For What Purpose | How Secured | When Due |
|---|---|---|---|---|
| 4,000.00 | Citizens National Bank Albion, Illinois | | Note | 2/6/47 |
| 4,000.00 | L. R. Medoff Grayville Illinois | | Note | 12/6/46 |
| 4,000.00 | Louis Feiber Grayville Illinois | | Note | 12/6/46 |

All money to be used for construction of Grayville job."

In the schedule of individually owned property, Mr. Hoop listed no assets, but Howe listed the following:
"260 acres farm land
3 lots house (home)
2100.00 owed."

Mr. Gill was minister of the Methodist Church in a nearby small town and had lived in the vicinity for 29 years. The defendant L. R. Medoff resided in Grayville and was a practicing physician. Louis Feiber resided about four miles north of Grayville on a farm. He had lived in the comunity a good many years and was a director of the Peoples National Bank in Grayville at the time of the transaction involved herein and later became vice-president of that bank. He had also served on school boards in the vicinity. Prior to July 6, 1946 Howe contacted Mr. Fieber and Dr. Medoff separately and told them that he and Hoop were bidding on the Grayville job and wanted to borrow $5,000 from each of them to use for a bid bond. They each agreed to loan that amount but they wanted to be secured. They contemplated that

Hoop and Howe were going to accompany their bid with a cashier's draft on the bank where the money was deposited. Howe informed them that he would have to have at least ten percent of the amount of the bid and that he had already arranged a loan with the Citizens National Bank for $5,000. The money was placed to the credit of Hoop and Howe in the Citizens National Bank with the agreement that no money could be withdrawn without the signatures of Howe, Gill, Medoff and Fieber. Howe agreed to pay Dr. Medoff $300 and the bank and Fieber $150 each for the use of the money loaned. The evidence discloses that neither Mr. Fieber nor Dr. Medoff knew of the negotiations that Howe had with Kunzer. Early in July after Kunzer had received the financial statement from Hoop and Howe he telephoned Gill to verify the amount of money on deposit. Kunzer testified in his deposition that at the last minute Mr. Howe came to Chicago with the request that he would need a bid bond on the job immediately because the city was ready to accept bids; that Gill also verified the notes, which were noted on the statement of Hoop and Howe, but not the due dates. Mr. Gill testified that Howe had told him that he needed $15,000 on deposit in his account for bidding purposes, that he told Mr. Kunzer when he called that there was something over $16,000 on deposit, as shown by the bank record; that Kunzer said the company had been requested by Hoop and Howe to furnish a bid bond and that he did not discuss the notes or anything else with Kunzer in the telephone conversation. No application for bid bond was produced by the plaintiff although requested to do so at the pretrial conference. Plaintiff was also unable to produce the further financial statements from Hoop and Howe referred to by Mr. Kunzer in his testimony. The plaintiff executed a bid bond for $6,750 dated July 18, 1946. Hoop and Howe also filed with their bid on the whole job a $500 draft on the Citizens National Bank. This draft was obtained by a check payable to the bank from Howe, Gill, Medoff and Fieber. Hoop and Howe were the low bidders only on the disposal plant and certain sewers and were awarded the contract therefor. On July 26, 1946 checks were issued by Howe, Gill, Fie-

ber and Medoff paying off the loan. On July 29, 1946 Hoop and Howe signed an application to plaintiff for a contract or performance bond, showing the contract had been awarded them for $65,884 and that the lowest bid other than theirs on this work was $80,476.48 and the highest bid $87,700; that progress payments were to be every 30 days and fifteen percent was to be retained until completion, and that the value of the work guaranteed after completion was approximately $48,000. On August 1st plaintiff issued a performance bond for Hoop and Howe in accordance with their application. Hoop and Howe abandoned the job early in 1947. Howe had left town shortly before this and the plaintiff was obliged to complete the job at a loss.

Evidence was offered by the defendants to show that the Citizens National Bank loaned Hoop and Howe $6,900 in October, 1946. In November and December Dr. Medoff loaned them $4,000. Between June 22, 1946 and February 19, 1947 the bank also honored overdraft checks of the partnership for $2,446.47 and later loaned it $4,000 to cover the overdrafts and for further construction money.

It was stipulated that the Citizens National Bank had been incorporated for $50,000 and had a surplus of $25,000 to December 31, 1946, at which time the surplus was increased to $30,000, and that its loan limit was not to exceed $7,500 in the year 1946 and $8,000 in 1947. It was further stipulated that, although the number of the performance bond, F–71854, appears upon the face of the financial statement of July 6, it was placed there by the plaintiff after the statement had been received from Hoop and Howe.

The plaintiff contends that the defendants Howe, Gill, Medoff and Fieber unlawfully conspired to defraud it in that they, knowing that the performance bond was about to be executed, agreed that the sum of $14,000 would be deposited and kept in the partnership's checking account in the Citizens National Bank until after the execution of the bid bond, at which time the money would be withdrawn and paid back to the said bank, Medoff and Fieber; that the money was deposited and withdrawn in accordance with

such agreement; and that the plaintiff executed the performance bond without knowledge of or consenting to the withdrawal of the money.

■ The first question presented is whether there was clear and convincing evidence, direct or circumstantial, that Howe, Gill, Medoff, and Fieber, or any of them, formed a conspiracy to fraudulently induce plaintiff to execute the performance bond. In Bergeson v. Mullinix, 399 Ill. 470, at page 474, 78 N.E.2d 297, at page 300, the court said:

> "The law is well settled that the burden is upon the plaintiff to prove the conspiracy charged in the bill by clear and convincing evidence. Tribune Co. v. Thompson, 342 Ill. 503, 174 N.E. 561. Generally, a conspiracy is established largely by circumstantial evidence. A common design is the essence of the charge, and if it be proved that the defendants pursued by their acts the same object, by the same means, one performing one part and one another, a conspiracy may be inferred if the evidence is sufficient. Ochs v. People, 124 Ill. 399, 16 N.E. 662."

Howe was the only one of the four that had negotiated with Mr. Kunzer, the company's bonding department manager. He had been talking with Kunzer on several occasions starting early in 1946, to induce the plaintiff to furnish a surety bond on Hoop and Howe if they were low bidders. Gill knew of the negotiations for the performance bond, as shown by his letter on March 8th. The court finds that Gill, Fieber, and Medoff had neither knowledge of the financial statement of Hoop and Howe nor of the application for the performance bond. There is no doubt that they were protecting themselves on the money loaned to Hoop and Howe for bid money or bid bond. Neither Fieber nor Medoff had any knowledge that the plaintiff was going to issue a performance bond or even the bid bond. They did not know of the telephone conversation between Gill and Kunzer. There is an insufficiency of direct evidence or circumstantial evidence to prove that the four defendants entered into a conspiracy to defraud the plaintiff.

This brings us to the point as to whether Gill can be charged with fraud in conspiracy with Howe. It does not appear that Gill was personally interested in any profits that might be obtained from the construction. He did not know what Howe had told Kunzer in his conversations with him. Howe was acting alone when he made the false financial statement and the application to the plaintiff for the performance bond. I do not find sufficient evidence to hold that Gill conspired with Howe to defraud the plaintiff.

■ Are any of the defendants collectively or individually guilty of deliberately and intentionally making misrepresentations to the plaintiff for the purpose of inducing the company to issue a performance bond? In Johnston v. Shockey, 335 Ill. 363, at page 366, 167 N.E. 54, at page 55, the court said:

> "An action for fraud and deceit must show six elements in order to afford relief: (1) The misrepresentation must be in form a statement of fact; (2) it must be made for the purpose of influencing the other party to act; (3) it must be untrue; (4) the party making the statement must know or believe it to be untrue; (5) the person to whom it is made must believe and rely on the statement; and (6) the statement must be material."

To the same effect, see Bennett v. Hodge, 374 Ill. 326, 29 N.E.2d 524; Krankowski v. Knapp, 268 Ill. 183, 108 N.E. 1006. Fraud will not be presumed but must be proved by such clear and convincing evidence that the mind is well satisfied that the charge is true. Racine Fuel Co. v. Rawlins, 377 Ill. 375, 36 N.E.2d 710; Gould v. Lewis, 267 Ill. App. 569, 572; Albers v. Smiley, 300 Ill. App. 66, 20 N.E.2d 631. Gill failed to disclose that the $16,000 on deposit to Hoop and Howe in the Citizens Bank was to be withdrawn and was only for bid purposes. Here I must observe that the reasonable inference to be drawn from the testimony of Kunzer and Gill is that Kunzer, when he inquired on the telephone as to the deposit of Hoop and Howe, was referring to the bid bond. Gill was also a victim of Howe and lost money personally in the transaction.

He, the bank, and Medoff furnished construction money to Hoop and Howe and together they suffered a loss of about $12,000. In accordance with Gill's letter of March 8th the bank did in fact attempt to carry out the financing of Hoop and Howe to the limit of its lending authority. Regardless of whether these subsequent actions had the effect of correcting the falsity of the cash on deposit for construction, as shown by the financial statement, as some of the defendants argue, they are at least evidence of the good faith of the bank, Gill, and Medoff. Furthermore, Howe's testimony corroborates the testimony of Gill, Medoff and Fieber that the loans made to Hoop and Howe prior to July 6, 1946 were intended by them to be applied solely for bid bond purposes. The evidence does not justify the inference that any of the defendants except Howe acted in bad faith or that they deliberately and intentionally influenced the plaintiff to issue the performance bond.

■■ The plaintiff has failed to prove that it relied on the nondisclosure of Gill that the money would be withdrawn after the bid bond was executed when it issued the performance bond. The evidence of misrepresentation by Gill concerned his failure to disclose the withdrawal agreement in his telephone conversation with Kunzer early in July before the bid bond was issued. From Kunzer's testimony it may be inferred that he relied on the deposit in the bank for the issuance of the bid bond; but it is not clear that he did so when the performance bond was issued. The plaintiff suffered a loss, not on the bid bond, but the performance bond. It was issued on the application of Hoop and Howe dated July 29, 1946, and the performance bond was dated August 1, 1946. What Howe had told Kunzer and what other financial statements Kunzer had from Hoop and Howe is not disclosed by the evidence. There was no statement in the application for the performance bond of money on deposit, although it did state the same indebtedness of $12,000 on the personal note, (not notes, as stated in the financial statement.) The application for the performance bond stated that the lowest bid was almost $15,000 more

than the Hoop and Howe bid. The high bid on this job was about $22,000 more. The evidence does not disclose that Kunzer again called the bank or verified any other details of the Hoop and Howe financial statement before issuing the performance bond. The money on deposit in the bank was always subject to withdrawal. The personal indebtedness was $14,000, not $12,000. In fact, Howe did not own the 260 acres. Hoop and Howe were going to attempt a $65,884 construction job with $620 worth of equipment and a net partnership equity, according to their statement, of about $6,000, but believing the report to Kunzer that the deposit when he called Gill was $16,000, a net equity of about $4,000. The evidence tends to indicate that Kunzer relied upon information he obtained from other financial statements of Hoop and Howe, conversations with Howe, together with his knowledge and experience in requirements for the issuance of performance bonds, instead of any representation made by Mr. Gill. The plaintiff is in no position to say it was deceived. Hayes v. Disque, 401 Ill. 479, 488, 82 N.E.2d 350. This court is firmly convinced that Mr. Kunzer did not rely upon Gill's statement in the telephone conversation but upon other misrepresentations which he might have had from Howe, such as, for example, the 260 acre farm which Howe claimed he owned. I can not believe that Mr. Kunzer could have relied upon a $16,000 bank balance, with an indebtedness of even $12,000, and $620 in equipment to construct a $65,000 job, where 15% of the contract price was withheld until completion. It is a well recognized rule that one who seeks relief on account of fraudulent statements must have relied upon such statements. Ringel v. Pearson, 306 Ill.App. 285, 293, 28 N.E.2d 576; Malewski v. Mackiewich, 282 Ill.App. 593. In Hooker v. Midland Steel Co., 215 Ill. 444, 74 N.E. 445, the court laid down the rule that representations allegedly fraudulent must be considered in connection with other statements that are made, together with the knowledge of the party allegedly defrauded, to determine whether a reasonable person would have relied upon the representations.

■ Furthermore, if the plaintiff did issue the performance bond relying on the $16,000 in the bank, and the statement that it was to be used for construction purposes by Hoop and Howe, it failed to exercise reasonable diligence or prudence, in view of the facts of which it had knowledge. Gill, Fieber and Medoff did not intentionally and deliberately induce the plaintiff to issue the performance bond. They had no experience on what assets or ability a contractor was required to have to obtain a performance bond. On the other hand, it was a part of the plaintiff's business to issue such bonds. Mr. Kunzer testified he had been in the bonding department of Fidelity and Deposit Company of Maryland 15 years and had been in charge of the bonding department of plaintiff four years. He knew or should have known when he issued the performance bond that Hoop and Howe could not complete the job on a $4,000 equity in cash. The notes of Medoff and Fieber were shown due in December, 1946. He should have known Hoop and Howe were not experienced contractors. The plaintiff, through its Mr. Kunzer, had ample notice that the financial statement was false when Mr. Gill told him that there was about $16,000 on deposit instead of about $18,000. This circumstance in itself, together with the other facts and circumstances shown in the application for the performance bond, would justify the court in concluding that the plaintiff was grossly negligent if its agent Kunzer did rely upon the amount on deposit when he issued the performance bond. Martin v. Sixty-Third and Halsted State Sav. Bank, 299 Ill.App. 123, 19 N.E.2d 634. Whether the plaintiff under such circumstances was guilty of negligence which will bar recovery is for the court in this case. See Martin v. Sixty-Third and Halsted State Sav. Bank, supra. Except where the parties are dealing at arm's length, and it appears that one party has been guilty of an intentional and deliberate fraud, the law requires all parties to exercise reasonable prudence in the business of life, and does not permit one to rest indifferent upon representations of an adverse party. Roda v. Berko, 401 Ill. 335, 81 N.E.2d 912. The court has found that none of the defendants except Howe attempted a deliberate fraud. Mr. Kunzer simply could not have read the Hoop and Howe financial statement and the application for performance bond with reasonable prudence. If he read it and studied it at all, he would not have executed the performance bond for his company. Even an ignorant person is held on a contract which he fails to read, where he is not dissuaded from doing so. Linington v. Strong, 107 Ill. 295.

■ Howe relies upon his discharge in bankruptcy as a defense to the claim here. This is no defense in an action of fraud. Sec. 17, Bankruptcy Act, 11 U.S.C.A. § 35.

■ The court therefore finds that the plaintiff has failed to prove clearly or even by a preponderance of the evidence that the defendants Gill, Medoff, and Fieber conspired to defraud the plaintiff, but as to the defendant Howe the plaintiff may recover.

Findings of fact and conclusions of law and order in conformity with the views expressed herein may be submitted.