(No. 25654.—

WILLIAM BENNETT *et al.* Appellees, *vs.* LUCY HODGE *et al.*
—(JESSE COLMAN, Appellant.)

*Opinion filed October 11, 1940.*

C. M. GRANGER, and EVA L. MINOR, (H. W. SNOW, of counsel,) for appellant.

STREETER & BLANKE, and LEN H. SMALL, for appellees.

Mr. Chief Justice Jones delivered the opinion of the court:

This is a suit, instituted in the circuit court of Kankakee county, for the partition of 200 acres of land located in Kankakee county. The original parties were numerous co-tenants, all claiming title through Semer Colman, deceased, as the common source. The complaint alleged that Jesse Colman, appellant here, owned 41/80 of the title. Cross-plaintiffs Peter A. Jeffers and Mary C. Ellsworth, brother and sister, respectively, of Alice Colman, deceased, who was Semer Colman's widow, filed an intervening petition making Jesse Colman cross-defendant. By this intervening petition, as amended, it was charged that a quitclaim deed from Alice Colman to Jesse Colman, by virtue of which he claimed an undivided 40/80 interest in the land is void, and should be set aside, and that he be decreed an undivided 1/80 interest he inherited from Semer Colman. The grounds urged for setting aside the deed were that Jesse Colman occupied a fiduciary relation to the grantor Alice Colman, and also that Jesse Colman procured the deed by fraud. Cross-defendant's answer denied both allegations. The cause was tried before the chancellor, who found in favor of cross-plaintiffs and set aside the deed. Jesse Colman has appealed directly to this court, since a freehold is involved.

Two principal questions are presented. The first is whether cross-plaintiffs proved the existence of a fiduciary relation and, if so, whether appellant maintained the consequent burden of proving the fairness of the transaction. The second is whether it was proved that appellant procured the deed by fraud. A determination of these questions entails a review of the evidence. Semer Colman originally owned this property in fee simple. He died in 1900 leaving a will, and, in 1927, Alice Colman, his widow, brought suit in the circuit court of Kankakee county to construe that will. It was decreed that the will gave Alice

Colman a life estate. The decree was silent as to who owned the fee, which passed as intestate property. Actually Alice Colman, as widow, received by the will an undivided one-half interest in the fee. It is the contention of cross-plaintiffs that she did not understand this but thought that since the decree found she had a life estate and did not mention the remainder, she owned only a life estate. E. A. Jeffers, executor of the will, testified that just after the trial in the suit to construe the will "she decided she had only a life interest in the estate." He added that she never talked to him about it after that.

Jesse Colman was a nephew of Semer Colman. When he was about eleven years old he came to live with Semer and Alice Colman and grew up in their home. Jesse worked with the tenant on the farm, and after Semer Colman's death he and another tenant leased the farm. From 1919 until 1933, Jesse was sole tenant on a cash rent basis. He paid $1300 a year rent and was permitted to deduct from this the amount of the taxes and $200 for repairs. In 1933, the lease was changed to a share basis, each party to receive one-half of the crops, and this lease was to be in force as long as Alice Colman lived.

For the last several years of her life Alice Colman lived at her home in Kankakee and during that time different members of cross-plaintiffs' families lived with her. They were present when the 1933 lease was executed; in fact, one of them wrote it on a typewriter. At this time a conversation took place relative to Jesse Colman's obtaining a tax title to the property. Jesse told Alice Colman he wanted to obtain her share of the property by tax title. The evidence is in conflict as to what else was said. Alice Ellsworth, Jerome Hollenbeck, Louella Hollenbeck, and Estella Ellsworth, all related to cross-plaintiffs, testified either that he said "as long as your people have no interest in this property, I might as well have it as anyone" or that he said "as long as your people cannot get this property, I might

as well have it as anyone." Jesse Colman denied having made these statements and testified that what he did say was that "as long as you or your folks have not the money to buy these taxes, I might as well buy them as anyone." After 1932, Alice never paid the taxes on the property. Jesse bought the farm at a tax sale in 1933 and has since that time continued to pay the taxes. At the time of her death he had paid taxes in excess of $1000, but never took out a tax deed. After the execution of the 1933 lease he also paid the insurance premiums on the buildings and paid for the repairs.

The quitclaim deed in question was executed January 11, 1934, about eleven months after the last lease was made. There is testimony that when the lease was being procured Jesse said he might later want a quitclaim deed to protect his tax title. About noon, January 11, he came to Alice Colman's home and had a conversation with her. Other members of the family were in the house and the door to the bedroom in which Jesse and Alice were talking, was open, but none of them overheard the conversation. Jesse left and went to the office of A. L. Granger, an attorney, and asked him to prepare the deed. Granger did so, went alone to the Alice Colman home, told her he had a quitclaim deed, read it to her, and she signed it in the presence of members of the Ellsworth family. The deed reserved a life estate in Alice Colman. She had been ill with the "flu" or a cold for about ten days and was in bed at the time, but there is no claim she was not then mentally sound.

At the time of this transaction Alice Colman was ninety years old. Physically she was in as good condition as the normal person of her age. Mentally she was active and alert, and made an effort to keep informed on current events.

The record contains a great deal of testimony by members of the Mary Ellsworth family, on the basis of which the argument is made that a fiduciary relation existed between Jesse and Alice Colman. However, it sheds little

light on this question. By their own statements, she rarely discussed business matters with them. They accompanied her when she visited the farm, about two or three times a year, but she and Jesse never talked business then. Jesse came to see her two or three times a year and they discussed farm problems privately. Two witnesses testified they thought Jesse managed the farm, but when asked in what respect his position differed from that of any other tenant, they were unable to answer, except that one of them said Alice did not require him to do things her way and never criticised what he was doing. There is no evidence that Jesse ever transacted any business with or for her other than that connected with the farm.

Louella Hollenbeck, daughter of Mary Ellsworth, testified she asked Alice Colman why she signed the deed, and Alice replied it did not mean anything; that she "had no interest in it anyway." On the other hand, Jesse Colman, his sister and her daughter, testified as to conversations in which Alice said she owned half the farm and she intended Jesse should have it.

This brings us to the question of whether the existence of a fiduciary relation between Jesse and Alice Colman was proved. In *Wharton* v. *Meyers,* 371 Ill. 546, we held the mere fact that the grantee is a tenant of the grantor does not establish a fiduciary relation or place the tenant in a superior position. Nor is such a relationship shown by the fact the grantee is a foster-child of the grantor. (*White* v. *Smith,* 338 Ill. 23; *Sears* v. *Vaughan,* 230 id. 572.) However, it is further the rule that courts of equity have refused to set any bounds to the circumstances out of which a fiduciary relation may spring. It includes all legal relations, such as attorney and client, principal and agent, guardian and ward, and the like, and also every case in which a fiduciary relation exists in fact, where special confidence is reposed on one side and domination and influence on the other. (*Seely* v. *Rowe,* 370 Ill. 336.) Where it

is sought to establish a fiduciary relation by parol evidence, the proof must be clear, convincing and so strong, unequivocal and unmistakable as to lead to but one conclusion. (*Johnson* v. *Lane,* 369 Ill. 135.) Considering the evidence in the light of the principles of law just set forth, and which are not disputed, we are of the opinion the burden of proving the existence of a fiduciary relation as a fact, has not been sustained. Jesse Colman had lived in Alice Colman's home a number of years when he was a boy, and for over thirty years he had been a tenant on her farm. This alone does not establish a fiduciary relation. Moreover, for several years before the execution of the deed she lived at her home in Kankakee, and not Jesse Colman, but members of the Ellsworth family who are seeking to have the deed set aside, lived with her and were with her constantly. At all times the terms of the tenancy were set forth in written leases, and there is no showing they were dictated by Jesse Colman or that they were unfair to Alice Colman. Assuming Jesse did choose what crops to plant and where they should be planted, this shows no more than that Alice Colman believed him to be a good farm manager. Jesse and Alice Colman discussed farm problems two or three times a year, and there is no evidence as to what decisions were made or by whom during these conversations. He never advised her in any other business transactions. There is an isolated statement that Jesse once paid Alice her share of the bean crop before the beans were sold. This is entitled to little weight, in the absence of knowledge of the circumstances or reason for this. Alice Colman was an aged woman, but she was mentally sound and capable of transacting business. The evidence shows a close relationship, perhaps affectionate, between Alice and Jesse, but does not establish a fiduciary relationship or that Jesse was the dominant party.

The next question is whether cross-plaintiffs proved actual fraud in the procurement of the deed. It is agreed

all of the following elements must be proved in an action based on fraud: (1) The misrepresentation must be of a statement of fact; (2) it must be made for the purpose of influencing the other party to act; (3) it must be untrue; (4) the party making the statement must know or believe it to be untrue; (5) the person to whom it is made must believe and rely on the statement; (6) the statement must be material.

At the outset it may be noted there is no evidence that at the trial in 1929, when Alice is said to have believed she had only a life estate, Jesse was in any way responsible for her having such a belief or that he knew of it then or later. And, as above stated, the evidence is in conflict as to what interest she later thought she owned. The only evidence of any misrepresentation on the part of Jesse Colman concerns a statement made by him to Alice Colman at the time of the execution of the lease in 1933. The two witnesses for cross-plaintiffs do not agree as to what he said when he proposed acquiring a tax title to the property. One testified he said that since her people had no interest in the property and the other, that since they could not get it, he might as well have it as anyone. His testimony is that he said since they could not buy it at a tax sale, he might as well buy it as anyone. The meaning of the statements attributed to Jesse by cross-plaintiffs' witnesses is certainly not clear. Strictly speaking, the statement that Alice's heirs had no interest in the property is true. They had no legal interest but merely an expectancy. If this is what Jesse meant, he made no misrepresentation at all. If he said that since they could not get the property, he may well have referred to their financial inability to buy it at tax sale, as he testified he did. The record does not show their financial condition nor that of Alice Colman. It should be noted that this is all the evidence relating to any alleged misrepresentation by Jesse Colman. It seems unlikely that this language was intended to be a statement that Alice owned

only a life estate. Members of the family were present and made no protest, but they did not testify they erroneously believed she owned only a life estate. It should also be remembered that the deed sought to be set aside because of this alleged misrepresentation was not executed until eleven months later. In addition, there is evidence that Alice Colman had expressed the intention that Jesse should have the farm. Of course, if she knew she owned the fee, or part of it, she did not rely on any misrepresentation Jesse may have made. In order to set aside a deed on the ground of fraud, the evidence must be clear and convincing. (*Schlensky* v. *Schlensky*, 369 Ill. 179.) The evidence in this case is not of that character.

The decree of the circuit court is reversed and the cause remanded, with directions to dismiss the cross-complaint for want of equity and enter a decree in accordance with the prayer of the complaint as amended.

*Reversed and remanded, with directions.*