(No. 26148.—

JAMES R. DOWNEY, Admr., *et al.* Appellants, *vs.* PHILIP LAWLEY, Exr., *et al.* Appellees.

*Opinion filed June 17, 1941—Rehearing denied September 15, 1941.*

McInerney & Power, Robert F. Munsell, and Charles C. & Richard M. Spencer, for appellants.

James D. Peterson, for appellees.

Mr. Justice Stone delivered the opinion of the court:

This is a will contest. A freehold being involved, the cause is here on direct appeal to review a decree of the circuit court of Cook county entered on a verdict finding the instrument in question to be the last will and testament of Robert Downey, deceased. The grounds on which the will was contested were fraud in its execution, undue influence, and mental incompetency. It is also argued that the testator signed the will without knowledge of its contents.

The bill here was filed by James Downey, brother of the testator. He, after starting the suit, died, and his representatives were substituted. The purported will was executed on May 25, 1937. After making several small bequests it devises and bequeathes the bulk of testator's estate to his sister Nellie Schmidt. Nellie Schmidt died after the filing of this suit and her representatives were substituted.

It is alleged in the complaint that at the time of the execution of the will the testator was suffering from senile

dementia and insane delusions, and that Nellie Schmidt, through her agent as attorney in fact for her, used divers and various means and acts of fraud, duress and undue influence to induce him to execute the purported will as he did.

The testator was seventy years of age at the time of the execution of the will contested. His wife had predeceased him. He owned a two-apartment building in the city of Chicago and lived on the first floor of it until 1936. A nephew, Maurice Downey, and his wife then occupied the second floor. On the occasion of the testator's illness in the fall of 1935, Maurice Downey's wife, a trained nurse, took care of him. On December 14, 1935, the testator, accompanied by Maurice Downey, went to the office of an attorney who had represented him in other matters, and executed a will, making Maurice Downey his sole devisee and legatee. In February, 1936, the testator went to live with his sister Nellie Schmidt and continued to live there, with the exception of short periods when he returned to his apartment, until his death in February, 1939.

The record shows that the will here involved was, at the request of the testator, drawn by one William E. Schneidwind, who, after typing same, delivered it to the testator. On the day it bears date the testator went to the home of one of the witnesses and asked her to go with him to witness his will, which she consented to do. He thereupon left and returned in a short time with the other witness, and the three went to an office some distance away, where, in the presence of yet other witnesses he signed the instrument and told the witnesses it was his will, and the witnesses signed it as such. He asked the witnesses and those present not to mention to anyone the fact that he had made a will. The witnesses to the will were friends of Nellie Schmidt.

The evidence on the issue of mental capacity consisted of the testimony of about the same number of witnesses on either side. Some testified that, in their opinion, the

testator lacked sufficient mental capacity to make a will, and, on the other hand, the others testified that he was of sound mind and memory. The analysis of this testimony would serve no useful purpose here. There is some testimony that the testator could not read and write, other than to sign his name. The evidence on the issue of mental competency, as it has been reported in the abstract, has been read and considered. The record contains no assignment of errors or rulings as to competency of testimony, nor does it disclose objections made thereto. The issue was peculiarly one in the province of the jury and no reason is here presented for disturbing its conclusion in the matter.

The record discloses that on the issue of undue influence there was no testimony that any one was instrumental in getting the testator to execute a will. It contains no evidence tending to show that Nellie Schmidt, or anyone for her, exerted any undue influence over the testator. She was not present when the will was executed nor when he went to the scrivener to have it drawn. It is argued that the scrivener was an attorney in fact for Nellie Schmidt. There is no evidence tending to show that anything he did was done at the suggestion of Nellie Schmidt. The testator took the will away with him after it was prepared. The scrivener was not present the next day when it was executed. It is undisputed that the testator requested the scrivener to draft the will for him and that he later asked two neighbor women to witness it, telling them it was his last will and testament. The rule is that undue influence which vitiates a will must be directly connected with the execution of the instrument and that the influence must be operating when the instrument is executed. (*Wickes* v. *Walden,* 228 Ill. 56; *Francis* v. *Wilkinson,* 147 id. 370; *Guild* v. *Hull,* 127 id. 523.) In the condition of the record before us the proponents were entitled to have the issue of undue influence withdrawn from

the jury. *Woodman* v. *Illinois Trust and Savings Bank,* 211 Ill. 578.

It is earnestly argued that the testator did not know the contents of the will and that, because this is so, the instrument cannot be held a valid will. Where a will is prepared for a testator and he is not given an opportunity to read it, or if he is unable to read and its contents have not been explained to him, such an instrument cannot be said to be his will, and such instrument will not, on contest, be sustained as a will. (*Wilbur* v. *Wilbur,* 138 Ill. 446; *Purdy* v. *Hall,* 134 id. 298; *Keithley* v. *Stafford,* 126 id. 507.) It is likewise the rule that where the testator is shown to have executed an instrument as his will, it will be presumed, in the absence of evidence of fraud, imposition or mental incapacity, that he was aware of the contents and his signature to the instrument is *prima facie* evidence of his having understandingly executed it. (*Sheer* v. *Sheer,* 159 Ill. 591.) Where a will is shown to have been prepared at the request of the testator, though under general directions, and he afterwards executes the same in the manner provided by law, it may not be set aside on the ground that he did not understand what it contained, except upon clear and satisfactory proof of that fact. *Compher* v. *Browning,* 219 Ill. 429; *Sheer* v. *Sheer, supra.*

In this case the testator, as we have pointed out, received the will from the scrivener on the evening before the day on which it was executed. On the next day he, unaccompanied by anyone, presented himself at the home of one of the witnesses and asked her if she would accompany him and act as a witness to his will. The same was true with the second witness. The presumption that the testator knew the contents of the will obtains in this case. The only evidence by which it is sought to overcome that presumption is the testimony of some of the witnesses that the testator could not read. We are of the opinion that

this evidence, if true, does not overcome the presumption that the testator knew the contents of the will. *Waters* v. *Waters,* 222 Ill. 26.

Appellants complain of certain instructions because, they say, those instructions ignored the issue of undue influence. There was no proof in support of such an issue. There was, therefore, no necessity for instructing the jury on that point and the refusal of the court to give contestants' instructions covering that issue was not error. Finding no error in the record requiring reversal of the decree, the same is affirmed.

*Decree affirmed.*