(No. 31474.—

JULIA PEPE *et al.*, Appellants, *vs.* NICHOLAS CAPUTO, Appellee.

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

322

FRANK T. JORDAN, and JOSEPH MARSHALL, both of Chicago, (FAY WARREN JOHNSON, of counsel,) for appellants.

EDWARD T. HAVEY, of Chicago, for appellee.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is a will contest which had its origin when appellants, who are three of the four children of Josie Caputo, deceased, filed a complaint in the circuit court of Cook County alleging that an instrument admitted for probate was not her last will and testament. It was charged that Josie did not understand the contents of the will because she was illiterate in the English language, and that Nicholas

Caputo, the chief beneficiary and appellee in this court, induced the will by fraud and undue influence upon the testatrix, in violation of an alleged fiduciary relation. The cause was heard by the court without a jury. At the close of appellants' evidence, the chancellor, on appellee's motion, entered a decree against appellants on the issue of undue influence, and at the close of all the evidence found that the instrument was the last will and testament of the deceased and dismissed the complaint for want of equity. A freehold being clearly and directly involved, appellants bring the cause to this court for direct review.

The will, which was dated June 18, 1943, was signed by the testatrix by her mark. It provided for a bequest of $10 to her son, Dominick Caputo, and for bequests of $100 to her daughters, Julia Pepe and Angelina Vitalo. The remainder of her estate, consisting of personal property appraised at $189 and real estate valued at $5000, she devised and bequeathed to her son Nicholas. Mrs. Caputo died at the age of sixty-eight years, on July 4, 1947, some four years after the execution of the will.

The record shows that the disputed will was drawn, at the request of the testatrix, by one Crescent P. O'Connor, an attorney, who was consulted by the decedent some time prior to its execution. O'Connor, who had known Mrs. Caputo since 1926 or 1927, made office memoranda at the time of the consultation, and he thereafter prepared the will and delivered it to her on June 18, 1943, at her home. Nicholas Caputo was at home with his mother on the occasion, but was not present when O'Connor read and explained the contents of the will to the testatrix or when it was executed. After O'Connor explained the will to Mrs. Caputo, she had a conversation with Nicholas in an adjoining room, but O'Connor was not present and did not know what was said. Mrs. Mitchell testified that the will was not read or explained to Mrs. Caputo in her presence; that all the conversation had while she was present was in

the English language; and that Mrs. Caputo spoke to her about the will in English and expressed the desire that it would stand. The witness further testified that she had often conversed with Mrs. Caputo in English, and had heard the testatrix speak English while marketing in the neighborhood. Both Mrs. Mitchell and O'Connor witnessed the will, which Mrs. Caputo signed by her mark.

It is earnestly argued that the testatrix, who did not read nor write the English language, did not understand the terms or effect of the instrument purporting to be her will. Several witnesses testified in behalf of appellants, all of whom had been acquainted with Mrs. Caputo for many years, and had seen her at frequent intervals during their acquaintanceship. The substance of their testimony was that the testatrix usually conversed in Italian; that when she did her marketing she either spoke in Italian or pointed to the items she wanted, and that she had difficulty in making change. One witness testified that she translated letters written to Mrs. Caputo in English into the Italian language for her. It is admitted that she could not read or write English, but the issue arises over whether it follows that she could not understand spoken English.

About the same number of witnesses for the appellee testified that, although they did not speak the Italian language, they had, on numerous occasions, carried on conversations in English with the testatrix. O'Connor testified that he had conversed with her in English at the time she had first consulted with him about the will and at the time of its execution, as well as on several other occasions when he had done business for her or for her husband. He further testified that on the occasion that the testatrix first consulted him about the will, she explained to him that she had some trouble with her son Dominick, and that her daughters had never helped her, but that Nicholas was a good boy; that he had done everything for her, and that he would take care of the home.

Where a will is prepared for a testator, and he is not given an opportunity to read it, or if he is unable to read and its contents have not been explained to him, such an instrument cannot be said to be his will, and will not, on contest, be sustained as a will. (*Wilbur* v. *Wilbur,* 138 Ill. 446; *Purdy* v. *Hall,* 134 Ill. 298; *Keithley* v. *Stafford,* 126 Ill. 507; *Downey* v. *Lawley,* 377 Ill. 298.) It is likewise the rule that where the testator is shown to have executed an instrument as his will, it will be presumed, in the absence of evidence of fraud, imposition or mental incapacity, that he was aware of the contents, and his signature to the instrument is *prima facie* evidence of his having understandingly executed it. (*Sheer* v. *Sheer,* 159 Ill. 591; *Downey* v. *Lawley,* 377 Ill. 298.) Where a will is shown to have been prepared at the request of the testator, though under general directions, and he afterwards executes the same in the manner provided by law, it may not be set aside on the ground that he did not understand what it contained, except upon clear and satisfactory proof of that fact. (*Compher* v. *Browning,* 219 Ill. 429; *Sheer* v. *Sheer,* 159 Ill. 591; *Downey* v. *Lawley,* 377 Ill. 298.) Evidence that the testator could not read does not overcome the presumption that the testator knew the contents of the will; nor does evidence tending to prove that he could not read English writing, and could not write it, have a tendency to establish either his inability to make a will or his ignorance of the contents of the will which he executed. *Wombacher* v. *Barthelme,* 194 Ill. 425.

Although there is in this case conflicting evidence as to whether or not testatrix could speak the English language, it appears that she knew who were the natural objects of her bounty; that she was able to remember them, and further, that she stated to the scrivener her reasons for each of the bequests made in the will. This testimony was not impeached in any degree. The chancellor heard the testimony. He was in a position to see and hear and more

properly weigh the testimony. When this occurs we will not disturb his findings unless they are manifestly against the weight of the evidence. *Belleson* v. *Ganas,* 394 Ill. 557; *McCrillis* v. *Utterback,* 397 Ill. 550.

On the issue of undue influence, the record discloses that there was no testimony that any one was instrumental in influencing the testatrix to execute a will. It contains no evidence tending to show that Nicholas Caputo, or anyone for him, exerted any undue influence over the testatrix. He was not present when the will was executed, or when she went to the scrivener to have it drawn. It is argued that the scrivener was an attorney in fact for Nicholas Caputo. The mere fact that O'Connor had prepared income tax returns for him does not make this so. There is no evidence tending to show that anything he did was done at Nicholas's suggestion. On the other hand, it is undisputed that the testatrix requested the scrivener to draft the will for her; that she asked the scrivener and a neighbor lady to witness the execution, and that she stated that she hoped it would stand. The rule is that undue influence which vitiates a will must be directly connected with the execution of the instrument, and that the influence must be operating when the instrument is executed. *Wickes* v. *Walden,* 228 Ill. 56; *Francis* v. *Wilkinson,* 147 Ill. 370; *Guild* v. *Hull,* 127 Ill. 523.

In considering appellants' argument that a breached fiduciary relationship existed between the appellee and the testatrix, it should be observed that a fiduciary relation does not obtain between parent and child as a matter of law, but must be proved by competent evidence. (*O'Malley* v. *Deany,* 384 Ill. 484; *Shuster* v. *Krueger,* 371 Ill. 543.) Such relation exists in all cases in which there is confidence reposed on one side and resulting superiority and influence on the other. The origin of the relation is immaterial. It may be legal, moral, social, domestic or merely personal.

If the confidence in fact exists and is reposed by one party and accepted by the other, the relation is fiduciary and equity will regard dealings between the parties according to the rules which apply to such relation. (*Feeney* v. *Run-yan*, 316 Ill. 246.) But the mere fact of relation of parent and child does not raise any presumption of undue influence. (*Kasbohm* v. *Miller*, 366 Ill. 484; *Smith* v. *Kopit-zki*, 254 Ill. 498.) The foregoing cases also state the rule that undue influence which will void a will or deed must go to the extent of depriving the party of his free agency, and must operate at the time of the transaction sought to be impeached. We are of the opinion that the evidence shows neither fraud nor undue influence. The facts that appellee had previously translated various legal instruments written in English into Italian for his mother and that he did all of her banking business does not, alone, establish a fiduciary relationship. Nor can we attribute fraud to appellee from the fact that the testatrtix consulted with him just before signing her will, or from the fact that appellee did not tell his brothers and sisters of the existence of the will. It is unquestioned that the testatrix was mentally competent at the time of, and after, the execution of the will. Had she wanted to disclose the will's existence to her other children, she was perfectly capable of doing so, and it was only natural that appellee should respect his mother's confidence if he knew of it.

We have carefully considered the entire record in this case, and have examined it for any possible arbitrary limitations of inquiry into the validity of the will, which might constitute grounds for reversal. Counsel was given wide latitude in inquiring into this subject. However, such questions as, "Do you recall any business transactions your mother had out of your presence after your father died?" and "Were you present at all business transactions your mother had after your father died?" which were put to

appellee on cross-examination, were improper as to form, in that facts were presumed. Objections to them were properly sustained. Nor did the court unduly limit appellants by refusing the testimony of additional witnesses in rebuttal. It is well settled that where testimony might properly have been introduced, as part of the proof in chief, it is discretionary with the trial court whether such testimony shall be admitted in rebuttal. (*City of Sandwich* v. *Dolan,* 141 Ill. 430.) The evidence offered here did not rebut any specific testimony of the defendant's witnesses. It was definitely cumulative evidence by those who testified in chief.

We are, therefore, of the opinion that the findings and decree of the circuit court of Cook County were in accordance with the law and the facts of the case, and that the decree should be affirmed.                   *Decree affirmed.*