MARY KUPCIKEVICIUS, Plaintiff-Appellee, *v.* JOHN A. FITZGIBBONS, Defendant-Appellant.

First District (5th Division)   No. 60863

Opinion filed August 13, 1976.

Howard & French, of Chicago (Richard G. French and Stuart N. Litwin, of counsel), for appellant.

Sandman, Levy and Moltz, of Chicago (Bernard W. Moltz and Donald P. Smith, of counsel), for appellee.

Mr. JUSTICE SULLIVAN delivered the opinion of the court:

In this matter, plaintiff was awarded $65,000 damages by a jury in a personal injury action after a verdict had been directed on the issue of liability. The issue on appeal concerns only the alleged excessiveness of the verdict.

There appears to be no question that plaintiff was a passenger in the rear seat of a Volkswagen which was stopped for a red light at a street intersection when it was struck from behind by defendant's automobile. There was, however, conflicting testimony concerning the force of the collision and the extent of injury suffered by plaintiff.

## The Collision

Plaintiff, her daughter who was also a passenger, and their driver all testified that the force of the impact moved the vehicle forward into the intersection, a distance of one car length plus a few feet. Their driver, however, admitted on cross-examination to an answer in a pretrial deposition that the vehicle had been moved only about five to ten feet by the impact.

Defendant, called as a section 60 witness, stated he first observed the Volkswagen stopped for a red light when he was about 100 yards away and traveling at about 15-20 m.p.h. He applied his brakes but, because of the icy condition of the street, his car skidded into the rear of the other car. His speed was 3-5 m.p.h. at impact. His passenger testified substantially the same concerning the condition of the street and their speed at the time of the collision.

As to the damage to the Volkswagen, its driver testified that the "bumpers, the fender and the engine were pushed in * * * totally flattened out." He stated that he was able to drive the car to the curb, but that "the engine made all kinds of funny noises" so that the vehicle had to be towed away. Defendant testified that the only damage to the Volkswagen was a dent in the rear trunk lid, about where the license plate was located, and a broken taillight. He stated that there was no damage to the rear fenders. There was no evidence as to the damage to defendant's vehicle.

Defense counsel attempted to introduce a photograph of the Volkswagen taken after the collision which purported to show the extent of its damage. This photograph was taken after the bumper had been removed, and it indicated the only damage to be a dent in the rear trunk lid and a broken taillight. Plaintiff objected to its admission on the ground that it had not been submitted pursuant to an earlier *Monier* order to produce documents. Defendant denied knowledge of any photograph, and it was complained by his attorney that the photograph had only recently been discovered in his insurance company's property damage file.[1] The court refused to admit the photograph, noting (1) it was at all times in the possession of the insurance company; (2) the bumper was removed, so that it did not accurately reflect the condition of the automobile immediately after the collision; and (3) the evidence was merely cumulative of the testimony concerning damage to the vehicle.

## Plaintiff's Injury

Plaintiff testified that the force of the collision first knocked her backwards and then sideways, so that she struck her back against the rear

---

[1] A separate file was maintained for the personal injury liability aspect of the collision, and it was indicated that the property damage and personal injury files were handled by different personnel in the insurance company.

seat and her right shoulder and head against the side of the vehicle. She immediately felt numb and nauseous and experienced pain in her head, neck and back. She was able to walk from the accident scene two and one-half blocks to her home, where she went to bed but had a sleepless night with "a lot of pain." When she continued to have pain while at work the next day, she went to her family physician, Dr. Yoksha.

Dr. Yoksha testified that he suspected a spinal injury because of the history she gave, her complaints of nausea and the pain in the neck and lower back, and his own physical examination which disclosed plaintiff's limited motion of and inability to flex her neck, numbness, and some reflex changes in her right leg. When her condition failed to improve and she exhibited some numbness of the right leg and a deterioration of the reflexes, he hospitalized her on December 6, 1969, three weeks after the accident, and arranged for an examination by a neurological specialist, Dr. Byla.

Dr. Byla obtained a history from plaintiff and, after a physical examination, diagnosed her condition as an acute strain of the muscles of the neck and lower back with nerve root damage resulting from an injury to an invertebral disc. Plaintiff gave him a history of having no prior symptoms and, on that basis, he related his findings to the auto accident. To confirm his diagnosis, a myelogram was taken which he testified revealed an extradural extrinsic pressure defect on the right side at the fourth and fifth lumbar and the first sacral vertebra levels. It was his opinion that there was damage to two discs, causing nerve root compression. He recommended a conservative course of treatment involving physical therapy, which was conducted on an outpatient basis and consisted of moist heat and traction applied to the back.

Plaintiff testified that she remained in the hospital for 17 days and, after her discharge, her right shoulder—which she had bumped in the collision—became increasingly painful to the extent that she was unable to move her arm. She was readmitted to the hospital in March of 1970, and her condition was diagnosed as acute capsulitis, also referred to as a frozen shoulder. Dr. McDonald treated this condition by placing plaintiff under a general anesthetic and manipulating her arm to break the adhesions which he believed had formed around the shoulder joint. She was also given physical therapy treatments by Dr. Rodriguez, which she described as being very painful.

Plaintiff was again hospitalized in May of 1971 for one week because of her back condition. A second myelogram was taken at that time which, according to Dr. Byla, was within normal limits. She failed to improve under physiotherapy treatment, which Dr. Byla testified confirmed the presence of a disc problem and, as a result, he once more hospitalized her in January of 1972. A third myelogram indicated the disc defect, and Dr.

Byla then did a laminectomy which revealed a ruptured disc that he said had been compressing the nerve root. In this surgical procedure, the disc was removed and the adjoining vertebrae were fused.

Plaintiff testified that after the operation she was required to wear a lower back corset for added support and that she continued to experience pain, some numbness, and occasional weakness. Dr. Byla expressed the opinion that the pain and discomfort she was experiencing at the time of trial was permanent.

By way of defense, it was shown that subsequent to the auto accident but prior to the third myelogram, plaintiff had been sitting on a stool at work which collapsed and that she had immediately experienced sharp lower back pain. Defendant's evidence also disclosed that Dr. Byla had filled out a report following that incident in which he stated that the symptoms of the illness reported, chronic back strain, were first noted on December 28, 1970.[2] Under cross-examination, the doctor admitted that the second myelogram had failed to reveal a defect and also that X-rays of her back revealed a congenital abnormality called Schmorl's nodes and osteoporosis, which is a weakening of bony structure because of a loss of calcium. Dr. Byla also testified, however, that the stool occurrence, the Schmorl's nodes and the osteoporosis were unrelated to plaintiff's disc problems which he believed were caused by the automobile accident.

In addition, defendant brought out the fact that subsequent to the collision but prior to the time she had been hospitalized for the frozen shoulder, she had slipped and fallen on ice, rendering her unconscious and requiring hospitalization. Dr. McDonald, although admitting that if the shoulder had been involved in that fall it could have caused the frozen condition, stated that he had been informed that it had not been involved and, on that basis, gave his opinion that the shoulder condition resulted from the auto accident.

The defense also offered the testimony of a medical witness who related plaintiff's back injury to the fall from the stool. We note, however, that on cross-examination this doctor stated that the automobile accident could have caused her disc condition.

OPINION

■■ Defendant portrays the automobile accident as a minimal collision which could not have caused the extent of injury claimed by plaintiff. He recognizes that the determination of damages was properly a question for the jury (*Dallas v. Granite City Steel Co.*, 64 Ill. App. 2d 409, 211 N.E.2d 907), but maintains that the jury's award was not supported by the evidence and was so excessive as to show passion and prejudice which

---

[2] The automobile accident out of which her suit arose occurred on November 14, 1969, and the stool incident on December 28, 1970.

he claims resulted from the "constant referral to painful medical treatment, treatment administered only after plaintiff had experienced two subsequent accidents."

Plaintiff answers this argument by pointing to testimony by herself, her daughter, and the driver—that the force of the collision propelled the Volkswagen into the intersection and so damaged the car that it had to be towed from the scene. In reply thereto, defendant refers us to the fact that her driver was impeached by his prior statement, stating that the Volkswagen had been pushed only five or ten feet—which he contends was proof of a slight impact.

Defendant also urges that the trial court committed reversible error in refusing to admit a photograph of the Volkswagen taken after the occurrence, which indicated only slight damage. He argues that the force of the collision was crucial to the determination of the proximate cause of plaintiff's injuries and that the photograph would have overcome the testimony of plaintiff's medical witnesses "who attributed her injuries * * * to plaintiff's account of the severity of the impact." The court excluded the photograph, because defendant had failed to produce it pursuant to an earlier *Monier* production order and for the further reasons that it was taken two weeks after the accident and was merely cumulative of evidence already offered by defendant regarding the extent of damages. Defendant responded, through his attorney, that the photograph had been recently found in his insurance company's property damage folder and had never been transferred to the personal injury file. He argues that he had no duty to produce an item over which he had no control and, under such circumstances, the appropriate remedy should have been to permit an examination and then allow the admission of the photograph.

■■ We have examined the authorities cited by defendant and feel that the exclusion of the photograph was not reversible error. The facts are similar to *Franzen v. Dunbar Builders Corp.*, 132 Ill. App. 2d 701, 270 N.E.2d 118, which approved a refusal to admit a document which defendant had failed to produce. *Franzen* held it to be no defense that the document was in the possession of a third person where defendant had control over that party. Similarly here, defendant's contention that he had no control over the photographs is unacceptable where it was in the possession of his insurance company and readily available at all times.[3] In any event, while we believe the court could properly have admitted the photograph, we note that defendant offered other evidence regarding the extent of his vehicle damage and, even assuming the photograph was improperly excluded, we do not see it to be so prejudicial as to be

---

[3] By virtue of a liability policy issued to defendant, his insurance company was required to defend this case and had retained the attorneys who were representing him in this matter.

reversible error. See *Wanner v. Keenan*, 22 Ill. App. 3d 930, 937, 317 N.E.2d 114.

■■ In the light of the foregoing, we believe the resolution of the conflicting testimony as to the force of the impact was properly a determination for the trier of fact, and we cannot say from our review of the record that the collision was of such slight nature that plaintiff's claimed injuries could not have resulted therefrom. See *Ault v. Washburn*, 72 Ill. App. 2d 161, 218 N.E.2d 108.

■■ Defendant also strongly urges that the proximate causes of plaintiff's injuries were the subsequent unrelated accidents. Specifically, he contends that her shoulder injury was caused by a slip and fall on ice and that her back injuries resulted from the stool collapse at work. He argues that plaintiff did not complain of the shoulder involvement at the time of her first hospitalization after the automobile accident of November 14, 1969, but only after her slip and fall on the ice—which occurred on February 22, 1970. Our review of the record, however, reveals that plaintiff stated that she struck her right shoulder in the collision and that Dr. Rodriguez testified she told him that she had injuried this shoulder in the auto accident when he took a case history from her on December 11, 1969, which was about four weeks after the collision and two months prior to her slip and fall. Further, Dr. McDonald, who treated plaintiff for her shoulder after the slip and fall incident, testified that the kind of frozen shoulder she had took weeks or months to develop, because it was caused by scar tissue forming after restricted motion due to pain from a previous trauma. In answer to a hypothetical question, he opined that her shoulder problem was not attributable to the slip and fall incident. In view thereof, we cannot say that the jury was improperly permitted to consider plaintiff's shoulder injury in determining her damages.

Defendant relates plaintiff's back injury to the stool collapse on December 28, 1970 (14 months after the automobile collision). It was after this occurrence that the back surgery was performed, and defendant points out that Dr. Byla noted in a medical report that plaintiff first showed signs of chronic low back strain and degenerative disc disease on December 28, 1970, the date of the stool incident. In further support of his contention that her injuries were the result of the unrelated accidents, defendant refers us to the fact that plaintiff walked home from the car collision, continued to her employment, and that she had indicated an improvement in her back condition prior to the stool incident.

■■ While there are discrepancies in the medical testimony, particularly that of the neurosurgeon, Dr. Byla, we note that the other medical witnesses who testified for the plaintiff also related her back and shoulder complaints to the automobile accident. Her back condition was

diagnosed well before the stool incident as a possible ruptured disc. The first myelogram which revealed disc damage was taken one year prior to the stool incident and was supported by the third myelogram and confirmed by the laminectomy which revealed the ruptured disc. It is true that Dr. Byla said the second myelogram failed to disclose the disc damage previously indicated. We believe, however, in the absence of contrary medical testimony, that this variance was adequately explained by Dr. Byla, who explained that a negative myelogram does not necessarily negate prior injury in that a ruptured disc tends to shrink or dry out over a period of time because of the diminution of nutrition to the substance inside the disc.

Only one medical witness was called by defendant. He had examined plaintiff on November 15, 1971, at the request of her attorneys and testified that she told him about the stool incident, the subsequent therapy, the second myelogram and her absence from work for about four months. She also told him she had strained her neck and back in the auto accident, and he thought she told him she was in good condition before she fell off the stool. From X-rays taken and the findings on his examination, he diagnosed a narrowing of the L-5 and S-1 disc. He had not studied the myelograms and admitted they would have enabled him to make a more accurate diagnosis. Plaintiff countered the testimony of defendant's medical witness by rebuttal witness Dr. Zurfli,[4] who examined plaintiff on June 23, 1972, and concluded that her back condition was unrelated to the stool incident.

The rule applicable to the testimony here was expressed in *Johnson v. Chicago Transit Authority*, 28 Ill. App. 3d 945, 949-50, 329 N.E.2d 395, where the court stated:

> "The fact that contrary inferences would be equally supported by the evidence is not sufficient to show unreasonableness of the verdict. It is the jury's function to weigh contradictory evidence, judge the credibility of the witnesses and draw the ultimate conclusion as to the facts."

A reviewing court will reverse only if the jury's conclusion is against the manifest weight of the evidence. (*Butler v. O'Brien*, 8 Ill. 2d 203, 133 N.E.2d 274.) Further, it has been held that a jury's determination will not be disturbed on review merely because (1) the jury could have found differently; or (2) the judges feel that other conclusions would be more reasonable. *Vasic v. Chicago Transit Authority*, 33 Ill. App. 2d 11, 180 N.E.2d 347. See also *Purdom v. Swanson*, 130 Ill. App. 2d 549, 263 N.E.2d 883.

■■ Here, from our review of the record, we believe that the evidence

---

[4] Defendant contends this doctor should not have been permitted to testify in rebuttal, and this contention is discussed later in this opinion.

was sufficient to justify the finding of the jury inherent in its verdict that plaintiff's back condition proximately resulted from the automobile collision.

It is next contended that the trial court erred in permitting plaintiff to call Dr. Zurfli as a rebuttal witness. He argues that this doctor's testimony was merely cumulative and, as such, should not have been received.

As we have stated above, during defendant's case in chief his medical witness testified it was his opinion that plaintiff's back condition was attributable to the stool collapse. Dr. Zurfli was then called in rebuttal by plaintiff and permitted to testify to his examination of her and to his opinion that her back condition was unrelated to her fall from the stool.

■■ The law is well settled that where testimony might have been offered during plaintiff's case in chief the question of whether it should be admitted in rebuttal is discretionary with the trial court. (*Pepe v. Caputo*, 408 Ill. 321, 97 N.E.2d 260.) Here, although Dr. Zurfli's testimony was cumulative of other medical testimony offered by plaintiff, it was also in reply to and would tend to rebut the prior opinion of defendant's medical witness—that the stool fall was the cause of plaintiff's back condition. Under these circumstances, it is our belief that the trial judge acted within his discretion in permitting this testimony in rebuttal.

■■ Finally, defendant contends that the $65,000 awarded as damages was excessive and resulted from passion and prejudice instilled in the jury by plaintiff's constant "litany of pain." As quoted in *Lau v. West Towns Bus Co.*, 16 Ill. 2d 442, 453, 158 N.E.2d 63, *appeal dismissed, cert. denied*, 361 U.S. 127, 4 L. Ed. 2d 180, 80 S. Ct. 256, the amount of a verdict is largely discretionary with the jury and "must be examined in the light of the particular injury involved, with humble deference to the discretion of the jury in making its determination and to the ruling of the trial judge on the post-trial motions." In determining on appeal whether a disputed verdict is the result of passion or prejudice, emphasis is not placed solely on the specific medical expenses incurred by the injured claimant. (*Orlandi v. Caraway*, 9 Ill. App. 3d 628, 293 N.E.2d 337.) Rather, consideration should also be given to all of the testimony surrounding the claimed elements of damage (*Altman v. Gregg*, 11 Ill. App. 3d 751, 298 N.E.2d 288) as well as the fact that the trial judge, who saw and heard all that took place at trial, approved the verdict. *Ward v. Chicago Transit Authority*, 52 Ill. App. 2d 172, 201 N.E.2d 750.

It is true that plaintiff testified to considerable pain because of her back and shoulder symptoms and their treatment. This testimony is characterized by defendant as her "litany of pain," which he would have us believe was orchestrated in such manner that it was prejudically unfair to him. There appears to be no question, however, that pain was associated with her symptoms and the types of medical treatment

414

provided. The treatment of her frozen shoulder required the adhesions to be broken by physical manipulation of the shoulder, and continued physical therapy was required to prevent the adhesions from reforming. It is indicated also, from the medical testimony introduced, that her back condition required a painful course of treatment, including three myelograms and traction, and eventually required surgery. Further, there was uncontradicted testimony that she would continue to experience pain and discomfort on a permanent basis.

There is no contention here that the jury was not properly instructed as to the elements of damage to be considered, and we do not see from the record, as defendant contends, that the complaints of pain by plaintiff "created such legally improper sympathy for her that a jury of ordinary sensitive persons would necessarily be coerced by her portrayal." In addition, the record reflects that there was evidence presented of over $23,000 in special damages, and we note that at least $5,000 of this amount was for medical expense incurred and wages lost prior to the dates of the other accidents which defendant maintains were the proximate causes of her symptoms.

Accepting the rule that assessment of damages is the preeminent function of the jury, and considering the totality of the testimony concerning plaintiff's physical condition together with the proof of medical expense and loss of wages, we cannot say that the jury's verdict demonstrated such passion, prejudice or misapprehension that reversal is required.

For the reasons stated, the judgment is affirmed.

Affirmed.

BARRETT and DRUCKER, JJ., concur.