*In re* ESTATE OF EDWIN LONG, Deceased (Marion Knobloch, as Ex'r of the Estate of Edwin Long, Deceased, Plaintiff-Appellant, v. Bruce Lyon *et al.*, Defendants-Appellees).

Fourth District  No. 4—99—0422

Argued January 20, 2000.—Opinion filed March 10, 2000.

Hugh J. Graham III (argued) and Bradley E. Huff, both of Graham & Graham, Ltd., of Springfield, for appellant.

Mark Rabin (argued), of Rabin, Myers & Hanken, P.C., of Springfield, for appellees.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Plaintiff, Marion Knobloch, executor of the estate of Edwin Long, deceased, filed a petition in the estate proceedings to sell farm real estate free and clear of a lease under which defendants Bruce Lyon, his son Jerry Lyon, and Jerry's wife Tia were named as tenants. The petition alleged that the lease was invalid because of Bruce's undue influence. The trial court denied the petition, and on May 27, 1999, entered an order under Rule 304(a) finding no just reason for delaying either enforcement or appeal. 155 Ill. 2d R. 304(a); see also 155 Ill. 2d R. 304(b)(1) (judgment entered in the administration of an estate that finally determines a right of a party). Plaintiff appeals. We reverse and remand with directions.

Edwin Long, the decedent, was born May 22, 1911. Decedent's wife, Eileen, inherited a 134-acre farm in Sangamon County, and the two lived on the farm for many years. Decedent had a fourth-grade education, could not read, and his wife took care of all the bookkeeping regarding the home and farm until her death in August 1991.

Decedent was employed for some 30 years at Wagner Casting in Decatur as a "snag grinder," taking burrs off iron castings. Decedent also farmed the 134 acres until approximately 1986. At that time, decedent and his wife began to lease the farm to Bruce in a series of oral one-year leases. The leases were 50-50 crop-share leases. Jerry farmed the land along with Bruce. Bruce owns 70 acres of farmland and farms some 1,200 acres. Jerry owns 10 acres, farms 170 acres, and works for De Kalb Seed Company.

Marion Knobloch lived in a farmhouse a mile away from decedent and Eileen until she and her husband moved to Illiopolis in 1991. After Eileen's death, Marion went by decedent's home almost daily to read the mail to him, tell him what he had to do, and write letters for him. Marion, with some help from decedent's sons and their wives, did all the bookkeeping for decedent. Decedent signed his own name to checks, but someone else filled them out for him. Marion also spoke with decedent daily on the phone.

Decedent and his wife had four children, Shirley Littrell, Sharon Bolay (who lived in Scottsdale, Arizona), Jerry E. Long, and Larry Long. On September 15, 1993, decedent executed a last will and testament, which provided:

"I own certain farm real estate previously owned by my late wife, Eileen Long, containing in total, 134 acres more or less. As soon as is conveniently possible after my death, and in all events, within six months after my death, I direct that the 134[-]acre tract be sold at public auction for cash. Said acreage shall be offered for sale and sold as two separate tracts. One tract shall contain my residence and all outbuildings and shall be not more than five acres in size. The other tract shall consist of the balance of the 134 acres."

In November 1993, decedent was hospitalized for pain in his left leg. On December 2, 1993, decedent executed a codicil, adding Bruce as a coexecutor of his will. The other executor was Marion Knobloch. At decedent's request, Bruce took decedent to the offices of decedent's attorney to execute the codicil. Bruce testified that decedent told him he wanted him to be an executor because his children did not trust Marion Knobloch. The children agree that they wanted Bruce to be coexecutor with Marion.

In April 1994, decedent was treated for bronchitis. In June 1994, all four of decedent's children petitioned the court for the appointment of a guardian of decedent's person and estate. Decedent contested the petition, and on the children's motion the petition was dismissed October 20, 1994.

Two or three days before November 1, 1994, Bruce presented an

eight-page written farm lease, prepared by Bruce's attorney, to decedent, and left a copy at decedent's home. The trial court ruled the estate waived any Dead-Man's Act objection (see 735 ILCS 5/8—201 (West 1996)) to that testimony. The lease provided for a 15-year term, commencing March 1, 1995, and ending on the last day of February 2010. Bruce testified that he read and explained the lease to decedent, but that testimony was later excluded as violating the Dead-Man's Act. Bruce and decedent signed the lease at decedent's home. Jerry and Tia later signed the lease as lessees. Neither decedent's family nor Marion learned of the 15-year lease until after decedent's death.

Decedent was hospitalized with a hernia problem in February 1995. In July and August 1995, decedent was hospitalized and diagnosed with metastic cancer. At that time, decedent executed a health-care power of attorney in favor of Bruce. Bruce made health-care decisions for decedent during this hospital stay. Decedent died December 14, 1995. Decedent's will was admitted to probate January 10, 1996. Bruce resigned as coexecutor on February 27, 1996.

Decedent's attorney, Robert Walbaum, testified that he had never seen a 15-year farm lease. Gene Meurer, with 29 years' experience in farm management and appraisals, testified that a long-term lease will reduce the sales value of a farm considerably, because it takes the active farmers out of the market. Meurer testified that he had never seen a 15-year farm lease, that the customary lease was an annual lease, which may be renewed for extended periods. With an annual lease, the owner can always talk with the operator of the farm to make plans and necessary changes in technology or whatever. It is common with 50-50 leases today for the operator to pay some supplemental rent.

Bruce testified that he was able to farm the land under a contract with De Kalb Seed Company, which he estimated increased the farm revenue $16,049.21 annually. De Kalb Seed Company paid for the seed, a benefit to decedent, and did the combining, a benefit to Bruce. Bruce testified he wanted the 15-year lease because he was going to put in half the tiling and he had to buy expensive machinery, a long-term proposition. Bruce knew of the petition for the appointment of a guardian and knew that petition had been voluntarily withdrawn on October 20, 1994.

On December 22, 1998, the trial court ruled that decedent's naming of Bruce as his coexecutor did not create a special relationship, that "a person is not an executor until he or she is appointed by the court and the office is accepted," and "no fiduciary relationship existed at the time the lease was executed." Although Bruce agreed to be executor before the lease was signed, Bruce was "simply respond[ing]

to an inquiry by the decedent." It was "noteworthy that the suggestion" to serve as coexecutor "did not originate with decedent but with his children." The court found no evidence that the decedent reposed trust and confidence in Bruce. Bruce was simply the tenant farmer for several years, "helped the decedent as a neighbor on several occasions," and did not in any way "influence the decedent in the management of his affairs."

The court stated that although "decedent had suffered reversals in his health and could not read or write, there was no evidence that decedent lacked the capacity to make a deed or other conveyance of his property. [Bruce] testified that he read and explained the lease to the decedent." Bruce "knew that decedent was failing," but it was important to Bruce "to keep the ability to farm the ground he had been farming for many years and therefore to put his previously oral arrangement with the decedent" in writing. Bruce knew that a 15-year lease was "unusual [and] a detriment to the value of the land," but Bruce had no "duty to disclose the same."

On the estate's motion to reconsider, the trial court, on April 30, 1999, concluded that it had "erred in admitting the testimony of Bruce Lyon as to the event of execution of the subject lease." See 735 ILCS 5/8—201 (West 1996) (Dead-Man's Act). Nevertheless, the trial court concluded that the estate had failed in its burden of proving the existence of a fiduciary relationship between Bruce and the decedent or the existence of a fiduciary duty. "The evidence shows that the decedent, while aged and uneducated, was one to manage his own farm affairs. The lease itself is not unfair. While the term is unusually long, and may be unfair to the *heirs*, it is not unfair to the *decedent*." (Emphasis in original.)

■ A fiduciary or confidential relationship may be found in one of two ways. A fiduciary relationship may be found to exist as a matter of law from the relationship of the parties, such as an attorney-client relationship, or may be found to exist by the facts of a particular situation, such as a relationship where trust is reposed on one side and results in superiority and influence on the other side. *Hensler v. Busey Bank*, 231 Ill. App. 3d 920, 928, 596 N.E.2d 1269, 1274-75 (1992); *Pottinger v. Pottinger*, 238 Ill. App. 3d 908, 917, 605 N.E.2d 1130, 1137 (1992); *La Salle National Bank v. 53rd-Ellis Currency Exchange, Inc.*, 249 Ill. App. 3d 415, 426-27, 618 N.E.2d 1103, 1112 (1993). Where a fiduciary relationship is alleged simply on the basis of evidence showing trust and confidence have been reposed by one person in another, the existence of the relationship must be proved by clear and convincing evidence. *In re Estate of DeJarnette*, 286 Ill. App. 3d 1082, 1088, 677 N.E.2d 1024, 1029 (1997).

■ The factors to be considered in determining whether a fiduciary relationship exists include the degree of kinship, disparity of age, health and mental condition, and the extent to which the allegedly servient party entrusted the handling of his business and financial affairs to and reposed faith and confidence in the dominant party. *Hensler*, 231 Ill. App. 3d at 927, 596 N.E.2d at 1274; see also *Lux v. Lelija*, 14 Ill. 2d 540, 546, 152 N.E.2d 853, 857 (1958).

■ Once a fiduciary relationship is established, the law presumes that any transaction between the parties in which the dominant party has profited is fraudulent, a presumption that may be rebutted only by clear and convincing proof. *Hofert v. Latorri*, 22 Ill. 2d 126, 130, 174 N.E.2d 866, 868 (1961); *Hofferkamp v. Brehm*, 273 Ill. App. 3d 263, 272, 652 N.E.2d 1381, 1388 (1995). A fiduciary may rebut the presumption of fraud or undue influence by clear and convincing proof that he has exercised good faith and has not betrayed the confidence reposed in him. Significant factors in meeting that burden include a showing that the fiduciary made a frank disclosure of the information he had, he paid adequate consideration, and the principal had competent and independent advice. *Rizzo v. Rizzo*, 3 Ill. 2d 291, 304-05, 120 N.E.2d 546, 553 (1954); *DeJarnette*, 286 Ill. App. 3d at 1088, 677 N.E.2d at 1029.

■ A trial court's determination that a fiduciary relationship did not exist and no undue influence was present will not be overturned unless the trial court's finding was against the manifest weight of the evidence. *In re Estate of Henke*, 203 Ill. App. 3d 975, 984, 561 N.E.2d 314, 320 (1990). In the present case the evidence, even when viewed in its aspect most favorable to Bruce, so overwhelmingly favors the executor that no contrary verdict based on that evidence could ever stand. *Maple v. Gustafson*, 151 Ill. 2d 445, 453, 603 N.E.2d 508, 512 (1992) (standard for evaluating whether judgment *n.o.v.*, directed verdict, or new trial should be granted).

While Bruce was not related to decedent, that fact works against Bruce in this case. If Bruce, who had farmed the 134 acres for a number of years, had been related to decedent, that might have explained why decedent was willing to give up control of his farm for 15 years. As the witnesses testified, and the trial court found, a 15-year farm lease is an extraordinary thing. A farm tenancy is a personal services contract in which the tenant is expected to perform services that require skill and judgment. *Ames v. Sayler*, 267 Ill. App. 3d 672, 675, 642 N.E.2d 1340, 1343 (1994). Just as no reasonable person would bind himself to see the same doctor or lawyer for the next 15 years, no reasonable farm owner would bind himself to use the same tenant for 15 years, without some reason for doing so. The fact that the seed

contract provided some benefits to decedent adds little to the analysis. Decedent had the benefits of the seed contract under the oral year-to-year lease.

The trial court found that the diminished value of the real estate was a detriment to the heirs, not to the decedent. We should not assume the decedent was indifferent to the harm caused to his children. In any event, diminished value would have been a direct detriment to the decedent if he had attempted to sell or mortgage the property. Even apart from diminished value, the unusual 15-year term was a detriment to decedent, who was tied to a tenant and prevented from making changes regardless of future developments. This was not a case where Bruce simply "put his previously oral arrangement with the decedent in writing." The 15-year lease gave Bruce a tremendous advantage over the previous lease.

Defendants cite *Bennett v. Hodge*, 374 Ill. 326, 330, 29 N.E.2d 524, 527 (1940) (not enough that tenant chose what crops to plant and where to plant them), a case where no fiduciary relationship was found, for the statement that "the mere fact that the grantee is a tenant of the grantor does not establish a fiduciary relation or place the tenant in a superior position." This case involves more, however, than a landlord-tenant relationship. In *Bennett*, numerous relatives claimed ownership to a farm through Semer Colman, who died without children. Jesse Colman, a nephew, grew up in Semer's home, with Semer and his wife, Alice. Jesse eventually became the sole tenant of the farm. He discussed with Alice a plan where she would not pay taxes on the farm, and he would buy the farm at a tax sale. Before Jesse received a tax deed, he took a quitclaim deed from Alice, which resulted in him owning 41/80 of the title, 40/80 from Alice and 1/80 that he inherited from Semer. The court noted evidence that Alice had expressed the intention that Jesse should have the farm. *Bennett*, 374 Ill. at 333, 29 N.E.2d at 528. In *Bennett*, accordingly, an explanation existed for the owner giving a quitclaim deed to the tenant. This case affords no explanation for the owner giving a 15-year lease to the tenant.

Sometimes courts seem to take a result-oriented approach to these cases. If what was done by the dominant party appears reasonable, the courts sometimes find no fiduciary relationship existed, when the more appropriate finding might be that the party did not abuse that relationship, as where the dominant party is the natural object of the bounty of the servient party. To some extent, it does seem appropriate to consider the nature of the transaction complained of in determining the existence of the relationship. Where one individual is able to persuade another to sign over his assets, that is certainly an indication that a fiduciary relationship exists.

A person who cannot read can execute a binding agreement; for example, where the document is prepared at his request and under his general direction. *Downey v. Lawley*, 377 Ill. 298, 302, 36 N.E.2d 344, 346 (1941). Where a person is known to be unable to read and the contents of an agreement have not been explained to him, the agreement is invalid. *Downey*, 377 Ill. at 302, 36 N.E.2d at 346 (involving a will). This lease was not prepared at decedent's request or under his general direction. No admissible evidence shows that the lease, inconsistent with the will that decedent had executed a year earlier, was read and explained to decedent. Even if we accept Bruce's uncorroborated testimony that he left the lease with decedent for two or three days before it was signed, there is no evidence that decedent discussed the lease with a third party or that it was suggested to him that he do so. The fact that Bruce did not bring the lease to the attention of those assisting decedent, and in fact kept the lease secret until after decedent's death, weighs heavily against its validity. The secrecy is aggravated by the timing of the lease, coming less than two weeks after the pendency of a petition for guardianship.

It is not a sufficient analysis to say that Bruce and the decedent were simply friends or that the normal trust between contracting parties does not turn a contractual relationship into a fiduciary relationship. Mere friendship can result in a fiduciary relationship. "This position of superiority may arise by reason of friendship, agency, or experience." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 500, 675 N.E.2d 584, 593 (1996). A fiduciary or confidential relationship exists where, by reason of friendship, agency, business association, and experience, trust and confidence are reposed by one person in another who, as a result, gains an influence and superiority over him. *McCartney v. McCartney*, 8 Ill. 2d 494, 499, 134 N.E.2d 789, 792 (1956); *Seven Bridges Courts Ass'n v. Seven Bridges Development, Inc.*, 306 Ill. App. 3d 697, 701, 714 N.E.2d 601, 603 (1999). Even a capable businessman may repose trust and confidence in a friend or associate. Faith and confidence may be reposed in a dominant party without entrusting much in the way of business and financial affairs to that party. Even accepting the trial court's finding that "decedent, while aged and uneducated, was one to manage his own farm affairs," the fact that decedent had a general knowledge of planting, harvesting, and marketing crops does not mean that decedent was on his guard when Bruce presented him with a written 15-year lease.

■ The relationship between decedent and Bruce was not the normal relationship between contracting parties. A landlord does not usually make a tenant his executor or give him the power to make his health-care decisions. *Cf. Wiszowaty v. Baumgard*, 257 Ill. App. 3d

812, 818, 629 N.E.2d 624, 630 (1994) (where the executor-neighbor-tenant was also the principal beneficiary of the will). The fact that decedent's children placed special trust and confidence in Bruce is not inconsistent with the idea that decedent placed special trust and confidence in Bruce.

Bruce clearly did not meet his burden of showing that he exercised good faith and did not betray the confidence reposed in him. There is no evidence that Bruce made a frank disclosure of the information he had to the decedent. Bruce certainly did not disclose any information to those assisting the decedent—decedent's children, Marion, or decedent's lawyers. Even after the lease was executed, Bruce did not disclose its existence until after decedent's death. No argument can be made that Bruce paid adequate consideration for this 15-year lease. Bruce paid no more than he paid for the annual lease that had been extended from year to year. No argument can be made that the decedent had competent and independent advice.

Because a fiduciary relationship existed between Bruce and the decedent, Bruce profited from that relationship by the 15-year written lease, and Bruce did not meet his burden of showing that he exercised good faith in the transaction, the lease is presumed to be fraudulent and must be set aside.

Because of our resolution of the foregoing issues, we need not discuss the additional arguments raised by plaintiff, *i.e.*, that decedent lacked the capacity to execute the lease in question and that we should apply the law that we apply in cases involving wills, that "one who benefits largely from a will made through his agency, in the absence of others having an equal claim to testator's bounty, is faced with the presumption that he exercised undue influence," irrespective of the existence of a fiduciary relationship (*Mitchell v. Van Scoyk*, 1 Ill. 2d 160, 172, 115 N.E.2d 226, 233 (1953)).

For the foregoing reasons, the judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment in favor of plaintiff executor.

Reversed; cause remanded with directions.

GARMAN and MYERSCOUGH, JJ., concur.